The STATE of Ohio, Appellee,

v.

TINCH, Appellant.

[Cite as *State v. Tinch* (1992), 84 Ohio App.3d 111.]

Court of Appeals of Ohio,
Warren County.

No. CA91–10–074.

Decided Nov. 30, 1992.

*Timothy A. Oliver,* Warren County Prosecuting Attorney, *Joan G. Robinson* and *Joanne Hash,* Assistant Prosecuting Attorneys, for appellee.

*Fowler & Cole* and *William G. Fowler;* and *Patrick D. Long,* for appellant.

---

WALSH, Judge.

In the early morning hours on August 10, 1990, the body of Phyllis Elam was discovered in a remote, wooded area in Warren County, Ohio. An autopsy conducted around noontime revealed she had bled to death from multiple stab and incised wounds. According to the coroner who conducted the autopsy, Elam had been dead for approximately twelve to eighteen hours, possibly a little longer, at the time of the autopsy.

Elam and defendant-appellant, Warren V. Tinch, met in December 1987 when Elam's son purchased an automobile at a Fairfield, Ohio dealership where appellant worked as a salesman. They thereafter began to date each other, but by late 1989, Elam had started dating another individual and decided to break off her relationship with appellant. Following the breakup, appellant repeatedly phoned Elam's residence and banged on the door to her residence, mostly late in the evening. Frightened by appellant's actions, Elam expressed concern to a fellow employee that appellant was following her and would often ask the employee to walk with her to her vehicle when she got out of work. Although Elam and appellant did go out together as late as one month prior to her death, there is evidence to suggest that Elam did so only to collect money appellant had borrowed from her.

Appellant, who shared an apartment with a female roommate after the break-up with Elam, notified the roommate that he had rented his own apartment. When appellant vacated the old apartment at mid-morning on August 7, 1990, he took with him only his clothes, leaving behind several items in the basement. Appellant proceeded to go to the automobile dealership where he worked. Sometime around 3:00 or 4:00 p.m. that afternoon, appellant informed his manager that he had a doctor's appointment. Prior to leaving work to go to the doctor, appellant cleaned out his desk. Approximately three hours later, appellant telephoned the manager and told him he (appellant) was being admitted to a hospital in Fairfield for pneumonia.

That same day, Elam, alone, entered a restaurant in Franklin, Ohio, between 5:00 and 6:00 p.m. to eat dinner. Elam left the restaurant approximately one-half hour later, never to be seen again. Her vehicle was later found locked and intact by the police in the restaurant's parking lot.

At approximately 2:00 a.m. on August 8, 1990, an employee at a hotel in Middletown, Ohio, observed a smear of blood on the mirror in the hotel's restroom and found a rolled up paper towel soaked in blood behind the commode. Bewildered, the employee then went to the garbage receptacle on the wall and discovered a bloodied shirt, handkerchief, pants, socks, undershorts and sports jacket. It was later learned that the handkerchief contained a monogram with the letter "T" and was given to appellant by his mother. Forensic tests subsequently performed on the clothes indicated that the blood found on the items was consistent with Elam's blood type.

Appellant was never admitted to the hospital as he told his manager. Instead, he checked into a hotel in Careyville, Tennessee, at 1:08 a.m. on August 8, 1990, using the alias "Blair Leroy." He later rented a room in a house in Goodlettsville, Tennessee, with the same alias and remained there until February 24, 1991. Appellant then moved to the Houston, Texas area, where he worked as a car salesman at two different dealerships under the alias "Jay Victor Hurtz."

On April 15, 1991, a vehicle belonging to appellant's son was recovered from a parking lot at the Greater Cincinnati International Airport following a routine check performed by airport police on vehicles remaining in the lot for more than thirty days. The check revealed that the vehicle was the subject of an investigation concerning appellant. Elam's purse and wallet were recovered from the vehicle's trunk and glove compartment, respectively. Both the purse and a piece of carpeting taken from the vehicle were subsequently analyzed and found to contain blood which was consistent with Elam's blood type.

Appellant was eventually apprehended in Louisville, Kentucky, on May 18, 1991 and extradited to Ohio. On May 28, 1991, the Warren County Grand Jury indicted him on one count of aggravated murder with prior calculation and design in violation of R.C. 2903.01(A) and three counts of aggravated murder in violation of R.C. 2903.01(B)—one each for purposely causing Elam's death while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit rape, kidnapping and aggravated robbery. Each aggravated murder count also contained three R.C. 2929.04(A)(7) death penalty specifications—that the offense was committed while appellant was committing, attempting to commit, or fleeing immediately after committing or attempting to commit rape, kidnapping, and aggravated robbery. Each count additionally contained a death penalty specification that appellant committed the offense for the purpose of escaping detection, apprehension, trial or punishment for another offense in violation of R.C. 2929.04(A)(3).

A plea of not guilty was entered to the charges and trial commenced on September 16, 1991 before a three-judge panel. At that time, the aggravated murder count based on rape was dismissed, as was the rape specification that

accompanied each of the other three counts. During the trial, the court permitted into evidence test results from a deoxyribonucleic acid ("DNA") analysis performed on the clothing found in the hotel restroom and the carpeting from the vehicle that indicated the DNA banding patterns obtained from these two exhibits matched the DNA banding patterns secured from Elam.

In an entry issued September 25, 1991, the three-judge panel found appellant guilty of aggravated murder with prior calculation and design with the kidnapping specification and aggravated murder based on kidnapping with the kidnapping specification and acquitted him on the remaining specifications and aggravated murder count. During the penalty phase, the court found the aggravating circumstance of Elam's kidnapping did not outweigh the mitigating factors beyond a reasonable doubt and accordingly sentenced appellant to life imprisonment without eligibility for parole for a period of thirty years. This appeal followed.

Appellant's seven assignments of error are as follows:

Assignment of Error No. 1:

"The court erred in failing to require the Warren County Prosecuting Attorney and the Warren County Sheriff to turn over to appellant pursuant to Ohio Revised Code 149.13 all records of the investigation of the instant case relating to other suspects."

Assignment of Error No. 2:

"The trial court erred in refusing to grant appellant's motion for acquittal pursuant to Criminal Rule 29 at the end of the state's evidence when the state was not required to prove the venue of the alleged crime with proof beyond a reasonable doubt pursuant to Article One, Section 10 of the Constitution of the State of Ohio."

Assignment of Error No. 3:

"The trial court erred in failing to grant the appellant's motion to suppress evidence seized from the automobile he was driving in Louisville, Kentucky, when the consent to search signed by the appellant was not voluntary and was in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution and applicable state constitutional provisions."

Assignment of Error No. 4:

"The trial court erred to the prejudice of the appellant in the convicting of the appellant of aggravated murder with the death specification when such finding was against the manifest weight of the evidence and was contrary to law."

Assignment of Error No. 5:

"The trial court erred to the prejudice of appellant in refusing to dismiss the kidnapping specification."

Assignment of Error No. 6:

"Appellant's conviction for aggravated murder with the specification of kidnapping was due to incompetence of trial counsel for appellant."

Assignment of Error No. 7:

"The trial court erred in admitting into evidence the results of the DNA testing."

In his first assignment of error, appellant argues that the court erred in denying his motion to order both the prosecutor and sheriff to release to him all investigatory records that pertained to other suspects in the case pursuant to R.C. 149.43.

R.C. 149.43, also known as the "Public Records Act," is the codification of the public's right of access to government records in Ohio and holds that "[a]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." R.C. 149.43(B). Originally, law enforcement investigatory records, such as those sought by appellant, were not subject to the compulsory disclosure provision of R.C. 149.43. See *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St.2d 126, 10 O.O.3d 312, 383 N.E.2d 124, paragraph four of the syllabus. However, the language in the statute has been amended over time to the point that the Supreme Court has recognized that the disclosure of such investigatory records is permissible under certain circumstances. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 82, 526 N.E.2d 786, 789; *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron* (1980), 64 Ohio St.2d 392, 394, 18 O.O.3d 534, 536, 415 N.E.2d 310, 312.

In the instant action, appellant moved the court for an order directing the prosecutor and sheriff to turn over to him information as to the name of every person to whom the police spoke during the investigation and whom the police suspected of causing Elam's death. At a hearing on the motion, the state countered that the names of those individuals to whom the police spoke had already been provided to defense counsel. The trial court subsequently denied appellant's motion, holding that appellant had failed to demonstrate that the usual discovery procedures would not provide an adequate means of acquiring the information to which he was entitled.

A governmental body that refuses to release public records, as a general rule, bears the burden of proving that the records are excepted from disclosure

by R.C. 149.43. *Natl. Broadcasting Co., supra,* paragraph two of the syllabus. When a criminal defendant invokes the statute in order to avail himself of law enforcement investigatory records, however, this court has previously held that before the state is required to meet this burden, the criminal defendant must first articulate a reasonable factual basis why he believes the records are exculpatory. *State v. Simmons* (Feb. 10, 1992), Butler App. No. CA91–05–078, unreported, at 4–5, 1992 WL 24783. If the defendant is unable to articulate a reasonable factual basis, the state is under no obligation to assert the rationale for its decision not to disclose the requested records.

Upon applying the rule announced in *Simmons* to the case at hand, we are of the opinion that appellant has failed to present a reasonable factual basis why the records he sought absolved him of any wrongdoing. Appellant's sole basis for access to the records pertaining to other suspects in the case is that the records might contain certain evidence that could be exculpatory. Under *Simmons,* such a basis is simply insufficient to shift the burden to the state to prove the records are nondisclosable. Moreover, as the testimony of an agent from the Federal Bureau of Investigation reveals, appellant was the only suspect in the case from the start. Based on the foregoing, the court properly denied appellant's motion to order the release of the investigatory records. The first assignment of error thus lacks merit and is hereby overruled.

The second assignment of error asserts that the court erred in denying appellant's Crim.R. 29 motion to dismiss because the state failed to prove the venue of the alleged crime beyond a reasonable doubt.

Venue in a criminal proceeding is governed by R.C. 2901.12, which provides in pertinent part that:

"(J) When the offense involves the death of a person, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in the jurisdiction in which the dead person's body or any part of the dead person's body was found."

In the case *sub judice,* although there was no evidence elicited that showed Elam's murder was committed in the jurisdiction in which appellant was tried, it is undisputed that the trial took place in the jurisdiction in which her body was found.

Appellant submits, however, that R.C. 2901.12(J) does not control the issue of venue because the statutory provision conflicts with Section 10, Article I of the Ohio Constitution. In part, Section 10, Article I provides: " * * * In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Because Section 10, Article I takes precedence over R.C.

2901.12(J) and the state failed to present evidence at trial that proved beyond a reasonable doubt that the alleged offense occurred in the jurisdiction where he was tried, appellant's argument goes, the court should have granted his motion to dismiss the case for lack of venue.

We find no merit to appellant's contention that Section 10, Article I of the Ohio Constitution and R.C. 2901.12(J) conflict with each other. Section 10, Article I states the broad, general proposition that a defendant must be tried in the jurisdiction in which the offense is alleged to have occurred. To follow this constitutional provision under the facts present here, however, where an individual was murdered but there is no proof as to the locale where the offense was committed, would lead to an absurd, obviously unintended result. It is patently clear that R.C. 2109.12(J) was specifically enacted to rectify such an unwanted outcome. Thus, Section 10, Article I and R.C. 2901.12(J) do not conflict with each other; rather, the statute is a necessary exception to Section 10, Article I that becomes applicable only in the event it cannot reasonably be determined in which jurisdiction an offense involving the death of a person was committed.

■ Having concluded that R.C. 2901.12(J) controls the issue of venue, we find that the undisputed evidence that Elam's body was discovered in Warren County was sufficient to allow reasonable minds to differ whether the state established venue. Accordingly, the trial court did not err in refusing to grant appellant's Crim.R. 29 motion for acquittal. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. The second assignment of error is not well taken.

Appellant's third assignment of error challenges the court's decision to overrule his motion to suppress certain evidence seized from the vehicle he was driving at the time he was apprehended in Louisville. It is first argued that the consent form appellant signed to give the police permission to search the vehicle was the product of coercion, thereby making the search violative of both appellant's Fourth and Fifth Amendment rights.

■ It is hornbook law that the constitutional right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment may be waived. *Zap v. United States* (1946), 328 U.S. 624, 628, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477, 1482. In order to validate a warrantless search that is conducted pursuant to an individual's consent, the consent must be voluntary and uncoerced, either physically or psychologically. *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 144, 75 O.O.2d 190, 194, 346 N.E.2d 666, 670. As noted by the United States Supreme Court in *Schenckloth v. Bustamonte* (1973), 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875, "[v]oluntariness is a question of fact to be determined from all the circumstances * * *." See, also, *State v. Davis* (1978),

56 Ohio St.2d 51, 57, 10 O.O.3d 87, 90, 381 N.E.2d 641, 645; *State v. Barker* (1978), 53 Ohio St.2d 135, 142, 7 O.O.3d 213, 217, 372 N.E.2d 1324, 1330.

■ The record indicates that following appellant's arrest in Louisville on May 18, 1991, he was visited in jail by two Warren County sheriff's deputies. The deputies advised appellant of his *Miranda* rights and thereafter attempted to question him about his involvement in Elam's death. The interview abruptly ended when appellant exercised his constitutional right to counsel and demanded that his attorney be present before he answered any questions. Two days later, the two deputies again visited appellant in the jail and requested permission to search his vehicle, explaining that appellant could decline, but that in the event consent was not given, an attempt to obtain a search warrant to search the vehicle would be made. Thereafter, appellant signed the written consent form.

The totality of the circumstances under which the consent form in the instant case was signed leads this court to conclude appellant voluntarily consented to the search. Having reviewed the testimony elicited at the motion to suppress hearing, we find no evidence which suggests the choice appellant made to sign the form was the product of an implicitly or explicitly coercive tactic on the deputies' part. Nor can we discern evidence that appellant consented to the search after his " * * * will had been overborne and his capacity for self-determination critically impaired." *State v. Buckley* (Feb. 6, 1986), Columbiana App. No. 83–C–52, unreported, at 8, 1986 WL 1748. That appellant made the decision to agree to the search in a custodial setting does not render the consent inherently coercive, for " * * * custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson* (1976), 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609.

■ Appellant also argues that the search was unconstitutional because consent was given after he had invoked his Fifth Amendment right to counsel. We find this argument likewise lacks merit. Law enforcement officials are permitted to continue to seek a waiver of an accused's Fourth Amendment rights even after the accused has invoked the right to counsel. *State v. Childress* (1983), 4 Ohio St.3d 217, 4 OBR 534, 448 N.E.2d 155, paragraph two of the syllabus. See, also, *United States v. Clymore* (E.D.N.Y.1981), 515 F.Supp. 1361, 1368. Consequently, the fact appellant had invoked his right to counsel prior to signing the consent form does not render the subsequently conducted search invalid.

In light of the above, we find that appellant's consent was voluntarily given and amounted to a valid waiver of his Fourth Amendment rights. The trial court thus did not err in denying appellant's motion to suppress. Appellant's third assignment of error is not well taken.

Under the fourth assignment of error, appellant argues that his conviction of aggravated murder with kidnapping specification was against the manifest weight of the evidence.[1]  He bases his contention on testimony elicited from the coroner, Dr. David Smith, who, according to appellant, testified that the time of Elam's death occurred twelve to eighteen hours prior to the discovery of Elam's body, thereby placing the time of her death sometime on August 9, 1990.  Because testimony presented at trial indicated that the vehicle appellant was driving was spotted by a Tennessee state trooper at a rest area in Cookesville, Kentucky, that day, appellant submits there is reasonable doubt as to his guilt sufficient to warrant a reversal of the conviction.

In resolving a criminal appeal that challenges a conviction on the basis of the weight of the evidence, the role of an appellate court is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.  In employing this standard of review, the court is required to view the evidence in a light most favorable to the prosecution.  *State v. Martin* (1986), 21 Ohio St.3d 91, 95, 21 OBR 386, 389, 488 N.E.2d 166, 169.  The discretionary power to reverse a conviction and order a new trial should be exercised if the court determines the jury clearly lost its way in resolving evidentiary conflicts and created a manifest miscarriage of justice.  *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720.

R.C. 2903.01(A) and (B), the aggravated murder offenses of which appellant was convicted, state in pertinent part:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping * * *."

Having thoroughly scrutinized the record before us, we find there was sufficient evidence presented at trial which, if believed, would convince the average mind of appellant's guilt on both R.C. 2903.01(A) and (B) beyond a reasonable doubt.  Admittedly, the state failed to present evidence or testimony that directly showed appellant kidnapped and killed Elam and instead relied solely on circumstantial evidence.  Yet, circumstantial evidence alone can be used to sustain an

---

1. Appellant does not specify which aggravated murder with kidnapping specification conviction is against the weight of the evidence.  Consequently, we will consider both the aggravated murder with prior calculation and design conviction (R.C. 2903.01[A]) and the aggravated murder based on kidnapping conviction (R.C. 2903.01[B]).

aggravated murder conviction. As the Ohio Supreme Court has acknowledged, " * * * circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson* (1991), 57 Ohio St.3d 29, 38, 565 N.E.2d 549, 559. Thus, it is not error that the proof of guilt used to convict appellant was based exclusively on circumstantial, and not direct, evidence. *State v. Franklin* (1991), 62 Ohio St.3d 118, 124, 580 N.E.2d 1, 7; *State v. Nicely* (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236, 1239.

Additionally, the three-judge panel's obvious decision to discount that portion of Dr. Smith's testimony that pertained to the time of Elam's death is not a ground for reversing appellant's convictions. In a criminal proceeding, the weight to be given to the evidence and the credibility of witnesses are matters which lie within the particular province of the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 151, 434 N.E.2d 1356, 1357. Inherent in the power accorded to the trier of fact is the power to " * * * believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Swiger* (1966), 5 Ohio St.2d 151, 156, 34 O.O.2d 270, 273, 214 N.E.2d 417, 422. This well-acknowledged criminal law principle is applicable in cases where a panel of judges constitutes the trier of fact. *Id.*

At the outset, we note that Dr. Smith testified that when he conducted the autopsy at approximately 12:00 p.m. on August 10, 1990, " * * * the body had been dead for a period of time, perhaps 12, 18 hours, maybe a bit longer." In light of Dr. Smith's testimony that Elam could have been dead for a period of time greater than eighteen hours before the autopsy was performed, appellant's assertion that the murder took place on a date when he was out of state is tenuous. Moreover, even assuming for purposes of this discussion that Dr. Smith did definitely opine that Elam had been dead for less than eighteen hours at the time of the autopsy, appellant's convictions were still not against the weight of the evidence given the remaining evidence, as it is the trier of fact's prerogative to reject a portion of a witness' testimony and accept the rest.

In sum, given that competent evidence supports the lower court's conclusion finding appellant guilty of both R.C. 2903.01(A) and (B), this court will not substitute its judgment for that of the lower court. *State v. Walker* (1978), 55 Ohio St.2d 208, 212, 9 O.O.3d 152, 154, 378 N.E.2d 1049, 1051. Accordingly, the fourth assignment of error is overruled.

For his fifth assignment of error, appellant submits that the court erred when it refused to dismiss the kidnapping specification that accompanied the aggravated murder with prior calculation and design conviction. The first of his two arguments presented in the assignment maintains that the motion for an acquittal of the kidnapping specification made at the close of the state's case should have been granted.

According to Crim.R. 29(A), a motion for judgment of acquittal may be granted if the evidence is insufficient to sustain a conviction on the offense charged. If reasonable minds can reach different conclusions whether each element of the offense has been proven beyond a reasonable doubt, the motion must be overruled. *State v. Bridgeman, supra.* An appellate court reviewing the denial of a Crim.R. 29 motion is required to view the evidence in a light most favorable to the prosecution. *Cincinnati v. Robben* (1982), 8 Ohio App.3d 203, 204, 8 OBR 274, 275, 456 N.E.2d 1255, 1255.

The death specification of kidnapping for which appellant was convicted is codified at R.C. 2929.04(A)(7), which states in pertinent part:

"(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count * * * and proved beyond a reasonable doubt:

" * * *

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, * * * and the offender was the principal offender in the commission of the aggravated murder * * *."

Kidnapping is set forth at R.C. 2905.01, which in relevant part prohibits the following:

"(A) No person, by force, threat, or deception, * * * shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

" * * *

"(2) To facilitate the commission of any felony or flight thereafter;

"(3) To terrorize, or to inflict serious physical harm on the victim * * *."

Appellant submits that the motion to acquit should not have been granted because the prosecution failed to present evidence that showed Elam was taken from the restaurant's parking lot and placed in appellant's vehicle by force, threat or coercion.

Viewing the evidence in a light most favorable to the prosecution, this court is of the opinion that reasonable minds could reach different conclusions whether each element of kidnapping had been proven beyond a reasonable doubt. As we recognized above, no direct evidence was elicited that showed appellant kidnapped Elam. Based on the following pieces of circumstantial evidence, however, we find reasonable minds could disagree whether appellant used force, threat or deception to remove Elam from the parking lot and restrain her of her liberty:

(1) following the break-up of the relationship, appellant had a history of stalking and harassing Elam; (2) Elam often had a co-worker walk her to her car out of fear appellant was nearby; (3) on the day Elam disappeared, she left a restaurant that is located at a well-traveled intersection and never reached her car, which was in the restaurant's parking lot; (4) her body was subsequently discovered two and one-half days later in a secluded, heavily wooded area, far removed from the restaurant; and (5) Elam's body exhibited numerous defense-type wounds on her hands and knees. Accordingly, the three-judge panel properly overruled the motion.

It is next argued by appellant that the three-judge panel erred in convicting him of the kidnapping specification where the evidence shows the kidnapping was merely incidental to the aggravated murder offense. He specifically asserts that the conviction cannot stand, since he did not have a separate animus to kidnap Elam.

■ The test to determine whether the General Assembly intended to allow for the imposition of several punishments for conduct that arose out of one act is contained in the allied offenses of similar import statute, R.C. 2941.25. *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 23 O.O.3d 447, 449, 433 N.E.2d 181, 185, certiorari denied (1983), 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 430. Under this statutory provision, a trial court is authorized to convict and sentence a defendant for two or more offenses which have as their origin the same criminal conduct if the offenses (1) were not allied and of a similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, 522; *State v. Mughni* (1987), 33 Ohio St.3d 65, 67, 514 N.E.2d 870, 872; *Moss, supra,* 69 Ohio St.2d at 519, 23 O.O.3d at 449, 433 N.E.2d at 185.

■ In the instant case, appellant was convicted of both aggravated murder with prior calculation and design and a death specification of kidnapping. The Supreme Court of Ohio has previously declared that where, as here, murder is the underlying crime, " * * * a kidnapping in facilitation thereof would generally constitute a separately cognizable offense." *State v. Logan* (1979), 60 Ohio St.2d 126, 135, 14 O.O.3d 373, 378, 397 N.E.2d 1345, 1352, cited with approval in *State v. Powell* (1990), 49 Ohio St.3d 255, 261, 552 N.E.2d 191, 198. The test to determine whether the kidnapping was committed with a separate animus and thus amounts to a separate offense is " * * * whether the restraint or the movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Logan, op. cit.* In the event the restraint or movement of the victim had no significance apart from the facilitation of the underlying crime, it cannot be said the defendant had a separate animus to commit the kidnapping.

An examination of the sequence of events that surrounded Elam's death indicates the kidnapping was more than merely incidental to her murder. In *Logan, op. cit.*, it was noted that secret confinement of the victim by the defendant, such as in a non-trafficked area, signified a separate animus for kidnapping apart from the underlying offense. See, also, *State v. Cooey* (1989), 46 Ohio St.3d 20, 24, 544 N.E.2d 895, 904. In the case at hand, Elam was last seen alive when she exited the restaurant to go to her car and her body was discovered two and one-half days later in a non-trafficked section of Warren County. Given this background, it is not unreasonable to conclude that following appellant's abduction of Elam from the restaurant's parking lot, he moved her to the woods. In light of the above, the restraint used by appellant was secretive, and thus more than merely incidental to Elam's murder. Accordingly, the three-judge panel did not err when it determined appellant had a separate animus to kidnap Elam. Based on the aforementioned, the fifth assignment of error is meritless and therefore not well taken.

■ The sixth assignment of error contends that appellant's aggravated murder with kidnapping specification conviction was the result of incompetent trial counsel.

This court initially observes that appellant is being represented on his appeal by the same counsel who represented him in the court below. Where a defendant is represented by the same counsel at trial and on the direct appeal that follows the trial, courts have held that a claim of ineffective assistance of counsel cannot be made by the defendant on appeal. *State v. Fuller* (1990), 64 Ohio App.3d 349, 356, 581 N.E.2d 614, 618; *State v. Montoya* (May 2, 1986), Lucas App. No. L–85–371, unreported, at 3, 1986 WL 5085. The rationale for refusing to allow the raising of an ineffective assistance claim under such circumstances is that counsel cannot realistically be expected to argue his or her own ineffectiveness or incompetence.

In the instant case, since it is appellant's trial counsel that is, in effect, arguing that appellant was deprived the effective representation of counsel at trial, this court is precluded from considering the claim. The proper avenue for bringing an ineffective assistance of counsel claim when the defendant has the same counsel at both the trial court and appellate level is a petition for post-conviction relief. See *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169; *State v. Jenkins* (1987), 42 Ohio App.3d 97, 536 N.E.2d 667. Appellant's sixth assignment of error is hereby overruled.

Appellant's seventh assignment of error alleges that the trial court erred in admitting the results of the DNA testing into evidence. During the course of the trial, expert testimony showed that the DNA banding patterns obtained from both appellant's clothing and the carpeting from the vehicle found at the airport

matched the DNA banding patterns obtained from Elam's blood. On appeal, appellant maintains that the court should not have admitted the results, since courts in Ohio are unsettled as to the admissibility of DNA testing results.

It is axiomatic that a determination of the admissibility of evidence in a criminal proceeding is a matter within the sound discretion of the trial court and that the ruling reached by the trial court will not be disturbed by a reviewing court absent an abuse of discretion. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1384. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 148.

The instant action deals specifically with the admissibility of scientific evidence. The generally accepted rule, as originally enunciated in *Frye v. United States* (1923), 54 U.S.App.D.C. 46, 47, 293 F. 1013, 1014, is that the result of a scientific process is admissible into evidence if it is " * * * sufficiently established to have gained general acceptance in the particular field in which it belongs." In *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444, however, the Ohio Supreme Court expressly declined to adopt the *Frye* test with respect to evidence of a scientific nature. Instead, the court promulgated a different test, one that it deemed "a more flexible standard" than the test stated in *Frye*, which it collectively derived from Evid.R. 402, 403 and 702.[2] In announcing the new test, the court wrote, 4 Ohio St.3d at 58, 4 OBR at 148, 446 N.E.2d at 448:

" * * * [W]e refuse to engage in scientific nosecounting for the purpose of deciding whether evidence based on newly ascertained or applied scientific principles is admissible. We believe the Rules of Evidence establish adequate

---

**2.** Evid.R. 402 reads as follows:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

Evid.R. 403 holds:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

Evid.R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

preconditions for admissibility of expert testimony, and we leave to the discretion of this state's judiciary, on a case by case basis, to decide whether the questioned testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue."

The criteria of admissibility announced in *Williams* have been applied to the specific context of DNA test results by two other appellate courts in Ohio. In *State v. Blair* (1990), 70 Ohio App.3d 774, 792–793, 592 N.E.2d 854, 865–866, the court found no merit to the defendant's contention that DNA testing had not been proven reliable enough to be admitted to criminal prosecutions after it scrutinized the extensive testimony of the two laboratory employees who had administered the test. In *State v. Thomas* (1991), 63 Ohio App.3d 501, 504–505, 579 N.E.2d 290, 292–293, the court likewise considered the admissibility of DNA test results in a criminal case and concluded that the results constituted reliable, scientific evidence and were therefore admissible.

At trial, Dr. Charlotte Word, a microbiologist at Cellmark Diagnostics where the DNA test at issue was performed, began her testimony with a thorough explanation about the DNA testing process. She also testified that DNA testing has been accepted as a reliable, accurate test by the scientific community and that nationally accepted guidelines for the type of DNA testing that is administered in criminal cases have been implemented. Dr. Word further explained that Cellmark abides by the testing procedures outlined in the guidelines and that the laboratory has failed only one proficiency test, in October 1987. A proficiency test is a situation designed to validate the adequacy of a laboratory's testing procedures whereby the laboratory receives material from a testing agency, conducts testing procedures on the materials received and then submits a result to the agency that is later analyzed. Since October 1987, Dr. Word noted, subsequent remedial measures have been undertaken which corrected the error that caused Cellmark to fail the test.

It is our belief that the three-judge panel did not abuse its discretion in admitting the DNA test results. There was substantial, credible testimony presented at trial that reveals the results obtained from a DNA analysis are reliable and accurate. Additionally, the evidence was relevant, under the circumstances, in that it helped the trier of fact to identify the identity of the blood that was found in the vehicle and on appellant's clothes. For these reasons, the decision to admit the results into evidence cannot be deemed unreasonable, arbitrary or capricious. The seventh assignment is accordingly overruled.

*Judgment affirmed.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.