Defendant-appellant, Jason Blevins, appeals his conviction in the Clermont County Court of Common Pleas for rape of a person under the age of thirteen, in violation of R.C.2907.02(A)(1)(b).[1] We affirm.
The victim was twelve years old at the time of the offense. She lived with her grandmother in the same apartment complex as appellant. The victim has been diagnosed with a learning disability which includes difficulties in understanding concepts. She and a friend, also twelve, were at her apartment on the evening of April 30, 1997. The victim had invited appellant and another man to join them there while her grandmother was at church. Appellant and the victim went to the victim's bedroom. The victim testified at trial that she was not threatened or forced and that when appellant asked her to have sex she did not say yes or no. She testified that appellant pulled down her pants and underwear and then pulled his down. She testified on direct examination that she understood the terms "penis" and "vagina" and that appellant had put his penis inside her vagina. She testified that she did not know prior to the date of the incident what the term "sexual intercourse" meant. She also stated that she did not know what the term penetration meant.
Medical records admitted by agreement indicated the presence of small blood smears on the victim's vagina. Ms. Jean Gramer ("Gramer"), an emergency medical technician, accompanied the victim as she was transported to the hospital. On her report, included with the medical records, Gramer indicated that in response to questioning regarding penetration, the victim had replied, "I don't know." Gramer testified at trial:
 A: I asked [her] to tell me what happened and she was pretty reluctant. She didn't want to get in detail. I questioned her, did he take your clothes off? Yes, he did. Did he take his clothes off? Yes, he did. Did you lay down? Yes, I did. Did he lay on top of you? Yes, he did. Did he stick his fingers in you or his penis in you? She said she didn't know.
 Q: Did that mean she didn't know if it was his fingers or his penis?
A: That I couldn't tell you.
 Q: You don't know what that answer was. She could have been saying I don't know if he stuck anything in me or I don't know if he put his penis or I don't know if he put his fingers.
A: That's correct.
Because a question was raised about her understanding of the terms "penetration" and "intercourse," the victim was cross-examined concerning her statement to Gramer. The victim stated that she had said "I don't know" when asked about intercourse because she "didn't know what the word meant." She also stated that the prosecutor had explained to her what the word meant during a phone call prior to the trial. The victim was asked if she had ever "made anything up" and the following exchange occurred:
 Q: Let me ask you this, did you discuss what you were going to say today with Mr. Breyer [the prosecutor]?
A: No.
 Q: You didn't talk with Mr. Breyer before you came in today?
A: I didn't talk to him today.
Q: Did you talk with him yesterday, a week ago?
A: I talked to him Sunday on the phone.
Q: Okay. So — did you talk with him about this case?
A: Yes.
 Q: Did you talk with anyone else from his office about this case?
A: Tammy.
Q: Who told you to say you had intercourse with my client?
A: I don't know, I just.
 Q: Let me ask you this * * * you said when you were talking with [Gramer] that you didn't know what intercourse was?
A: He explained —
 Q: Let me finish. When Mr. Breyer asked you what happened, you said you had sexual intercourse. Who told you those terms?
A: He explained it to me.
(Emphasis added.)
The state then moved to introduce a taped statement made by the victim to an investigator from the sheriff's office at the hospital on the evening of the incident. The state moved to admit this statement to rebut any inference of improper influence by the prosecutor. The trial court found there had been an inference of improper influence in the above exchange. The trial court also found that the tape of the victim's interview with the investigator was a prior consistent statement and therefore admitted the tape.
The victim's friend testified that she entered the victim's bedroom that evening and observed appellant on top of the victim. She stated that they appeared to be having sexual intercourse. Appellant did not testify. Appellant's witness, Melissa Matlock, testified that she lived in the complex and knew the victim. She testified that she believed that the victim was not truthful because she had indicated that she had twice "slept with" appellant willingly. Ms. Matlock admitted that her belief concerning the victim's truthfulness was based on this inconsistency and not on her reputation for truthfulness in the community.
The jury found appellant guilty as charged. Appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY PERMITTING INADMISSIBLE HEARSAY EVIDENCE IN THE FORM OF A TAPED STATEMENT BY THE VICTIM.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ALLOWING A JURY VERDICT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error appellant argues that the tape should not have been admitted because counsel was not implying improper influence by the prosecutor, but only trying to determine the origin of certain terms which the victim had stated she did not understand. Appellant also argues that the taped statement was not consistent with the victim's testimony at trial. We consider these arguments in turn.
Evid.R. 801(D)(1)(b) provides that statements are not hearsay if the declarant testifies at trial, is subject to cross-examination, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive. The rule
 permits the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence, by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive or influence to invent or falsify, as tending to rebut the charge.
Motorist Mutual Ins. Co. v. Vance (1985), 21 Ohio App.3d 205,207. A determination of the admissibility of evidence in a criminal proceeding is a matter within the sound discretion of the trial court and its ruling will not be disturbed by a reviewing court absent an abuse of discretion. State v. Tinch (1992), 84 Ohio App.3d 111.
The trial court found that defense counsel's questioning had implied that certain terms were suggested by the prosecutor. Although appellant argues that the questioning on this matter was not as extensive as the trial court indicated, we find that improper influence had been at least implied, if not expressly charged. Counsel asked, "Who told you to say you had intercourse with my client?" He did not ask "who provided a definition" or "who have you discussed your testimony with?" An implication of improper influence was shown and the trial court was within its discretion to allow rehabilitation through the introduction of a prior consistent statement.
Appellant next argues that the statement was not consistent. The prosecution argued and our review has determined that the statement was consistent. The victim's account of when she met appellant, when he came to the apartment, and whether he forced or threatened her, were all consistent with her account on the stand. The taped statement included a statement in response to questioning that penetration had occurred. This was also consistent with her testimony at trial. Appellant argues that there was an inconsistency concerning whether the victim stated that her pants were removed or around her ankles. We find this inconsistency to be immaterial and due more to the specificity of the questioning on the stand than to a difference in the victim's overall account of the events. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387 (citation omitted). In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. Hawkins (1993),66 Ohio St.3d 339, 344.
After a thorough review of the record, we find that appellant's conviction was not against the manifest weight of the evidence. Evidence was presented by the state which, if believed by the jury, would allow them to conclude that all of the elements required for a conviction under R.C. 2907.02(A)(1)(b) were proven beyond a reasonable doubt.
It was undisputed that the victim was twelve years old on the date of the sexual conduct. As indicated above, the victim testified that appellant inserted his penis or perhaps fingers in her vagina. Either would be sufficient to complete the offense. Medical records were admitted which corroborated the victim's account. The testimony of the victim's friend was also consistent with the victim's description of the events. Even appellant's own witness indicated that she believed that intercourse had occurred. In accordance with the standard of review articulated above, we find that appellant's conviction was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] R.C. 2907.02(A)(1)(b) states: "No person shall engage in sexual conduct with another * * * when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.01(B) defines sexual conduct in pertinent part as "the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another."