OPINION
Defendant-appellant, Mark Anthony Wilson, appeals his convictions in the Clermont County Court of Common Pleas for burglary, a violation of R.C. 2911.12 (A)(3), and theft, a violation of R.C. 2913.02(A)(1). We affirm the trial court's judgment.
Appellant's stepfather, James Rohrich, Sr., had been married to appellant's mother. Periodically during the marriage, appellant lived with Rohrich and Rohrich's son, James Rohrich, Jr. ("Jamie") at 3688 Blue Sky Park Drive. After appellant's mother died, however, appellant no longer had access to that home, had no key, and did not have Rohrich's permission to enter the house. In November of 1998, appellant lived in an apartment with his girlfriend, Robin Snider. Aaron Gay and Rachel Thompson, who were acquaintances, occasionally stayed at appellant's apartment.
Several weeks before the burglary and theft, appellant had been working and socializing with Jamie. Jamie had been building a gun rack. He took appellant to his home in order to show the gun rack to him. Jamie kept several firearms in a cabinet and several firearms on the gun rack in his second-floor bedroom. It held rare bolt-action rifles, an unusual semi-automatic German "Bowser" assault rifle, and a Chinese SKS semi-automatic assault rifle with a bayonet. All of the firearms in the cabinet and on the rack were operable. At some point after Jamie showed the firearms to appellant, Jamie secured the firearms to the rack with a chain and padlock.
On the morning of November 2, 1998, appellant, Thompson, and Gay borrowed the car of Shawn Starrett, another acquaintance who stayed at appellant's apartment. Appellant, who drove the car, told Thompson and Gay that he thought he could find marijuana. Thompson slept in the back seat while appellant drove to Rohrich's residence. Appellant pulled the car into the driveway near the rear of the house. Gay and Thompson, who had awakened, watched as appellant entered the house through the back door. In a moment, appellant returned and told Gay that the residents did not want them to park in the driveway. Thompson drove the car out of the driveway, turned around, and pulled into the driveway several minutes later.
As Thompson pulled the car back into the driveway, appellant walked around the house carrying approximately six firearms that were chained together along with a broken gun rack. Thompson stopped at the end of the driveway, and appellant ordered Gay to help him load the firearms into the car. After loading the firearms into the back seat, they got into the car and left the residence, with appellant driving. On the way back to appellant's apartment, they stopped at another residence, where Gay helped appellant store the firearms in the basement.
When Jamie came home, he realized that someone had entered the home and immediately suspected appellant. Jamie went to appellant's apartment and asked Robin if appellant was home. Appellant was not at home, and Jamie told Robin to ask appellant to call him. Jamie did not mention the missing firearms to Robin. When appellant called Jamie, appellant stated, without being told or prompted, that he had not taken the firearms.
On several occasions after the burglary, Gay went with appellant to sell the firearms. Generally, appellant would first speak to potential buyers. Then he and Gay would return with the firearms to complete the sales. A few days after the burglary and theft, appellant and Gay met Allan Davis to negotiate the sale of several firearms, including the Chinese SKS. Negotiations broke down, however, and an argument ensued when Davis suspected appellant had stolen some of his money. Davis called the police.
On December 10, 1998, the state indicted appellant on charges of burglary, a second degree felony, and theft, a fourth degree felony. At his jury trial, which was held on July 7, 1999, appellant presented several alibi witnesses. Those witnesses testified that appellant had been asleep in his apartment at the time of the burglary, that Gay and Thompson had borrowed Starrett's car, and that they had committed the crimes themselves. The jury convicted appellant of the lesser included offense of burglary, a third degree felony, and theft as charged in the indictment.
On August 13, 1999, the trial court held a sentencing hearing and sentenced appellant to serve a five-year prison term for burglary and a one and one-half year prison term for theft. Appellant's sentences were to be served concurrently. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1:
 APPELLANT'S DUE PROCESS RIGHTS AND RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN COUNSEL FAILED TO MOVE FOR ACQUITTAL UNDER CRIM.R. 29 AT THE CLOSE OF THE EVIDENCE.
Appellant contends that his trial counsel was ineffective because he failed to renew his Crim.R. 29 motion for acquittal at the close of all the evidence. Appellant's attorney moved for acquittal at the close of the state's evidence. The trial court denied counsel's motion. Appellant claims that a renewed motion at the close of all the evidence is standard practice, and counsel's failure to renew the motion was deficient performance because its absence waived review of his initial motion for acquittal, prejudicing him. We disagree.
When reviewing appellant's claim of ineffective assistance of counsel, this court engages the two-pronged test enumerated inStrickland v. Washington (1984), 466 U.S. 668, 690-91,104 S.Ct. 2052, 2066, and approved by the Ohio Supreme Court in State v.Bradley (1989), 42 Ohio St.3d 136, syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. This court determines: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant so as to deprive him of a fair trial.Strickland, 466 U.S. at 690-91; 104 S.Ct. at 2066.
To show error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. Id. Since judicial scrutiny of counsel's performance is highly deferential, reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. Id. To show resulting prejudice, appellant must establish that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. Id. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. State v. Loza (1994),71 Ohio St.3d 61, 83.
Here, even assuming, arguendo, that counsel's actions were deficient, appellant has not shown that the failure to renew the Crim.R. 29 motion prejudiced him. Under Crim.R. 29(A), a trial court shall order the entry of a judgment of acquittal on one or more of the charged offenses if the evidence is insufficient to sustain a conviction when examining all the evidence in the light most favorable to the state. State v. Bridgeman (1978), 55 Ohio St.2d 261,263; State v. Tinch (1992), 84 Ohio App.3d 111, 124. There is no prejudice to an appellant and, consequently, no ineffective assistance of counsel for not renewing the motion, if the state introduces sufficient evidence on each element of the offenses. State v. Amyx (1988), 55 Ohio App.3d 54, 57.
In this case, appellant was convicted of burglary under R.C.2911.12(A)(3), which provides:
 (A) No person, by force, stealth, or deception, shall do any of the following:
* * *
 (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or occupied portion of the structure any criminal offense[.]
Appellant was also convicted of theft of a firearm under R.C.2913.02(A)(1), which provides:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent[.]
Appellant's accomplices, Gay and Thompson, testified that they accompanied appellant to the Rohrich residence. Appellant left the car, entered the home, and emerged carrying at least six firearms that had been chained together on a rack. Appellant had not been authorized to enter the home or to take the firearms. After taking the firearms, the three drove to another home, where appellant stored the firearms. Appellant sold at least four of the firearms and attempted to sell firearms to Davis, who testified about appellant's actions.
Although appellant presented evidence in support of an alibi defense, the jury had before it sufficient evidence on each element of burglary and theft to find him guilty of both offenses. Even had counsel renewed his earlier Crim.R. 29 motion at the close of all the evidence, the court would have properly denied it. Therefore, appellant was not prejudiced when his attorney did not renew the motion. See Amyx, 55 Ohio App.3d at 57. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS NO SUBSTANTIAL CREDIBLE EVIDENCE EXISTS UPON WHICH THE VERDICT CAN STAND.
Appellant contends that the state's witnesses did not present substantial credible evidence to support his convictions. Appellant argues that he introduced strong evidence supporting his alibi defense so that the verdicts were against the manifest weight of the evidence.
In reviewing the entire record for a manifest weight claim, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Id.
The evidence that appellant committed the crimes consisted of eyewitness testimony of both of appellant's accomplices. Gay and Thompson testified to extremely similar versions of the events, stating unequivocally that appellant had entered the Rohrich home and emerged with the firearms. Davis testified that appellant had attempted to sell him firearms, partially corroborating Gay's version of the events.
Appellant introduced alibi evidence from several witnesses who testified that appellant did not accompany Gay and Thompson but instead slept at his apartment. However, it was within the jury's province to determine whether or not to believe appellant's alibi evidence. We cannot say that the jury's verdicts are against the manifest weight of the evidence. Appellant's second assignment of error is denied.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.