OPINION
Defendant-appellant, Rex McCrackin, appeals from his conviction and sentence for rape in the Butler County Common Pleas Court. The trial court's judgment is affirmed.
Yvonne Ziels is a licensed practical nurse who worked for a temporary agency that posted her at various nursing care facilities in the area. McCrackin was employed by another agency as a nursing assistant. Ziels first met McCrackin in May or June of 1999. At times, McCrackin worked under Ziels' immediate supervision.
In August 1999, McCrackin began selling Ziels "diet" pills or "speed" to help her through the long shifts she had to work. He sold diet pills to her on about five occasions from August 1999 to December 1999. McCrackin visited Ziels' home approximately four times, selling her diet pills on several of these occasions, even when Ziels' husband and children were present.
On the morning of April 13, 2000, Ziels was returning home after dropping her son off at school when she saw McCrackin in his automobile at the stop sign on her street. She had not seen him for two months and had been trying to stay way from him because she had begun to feel uncomfortable around him. After McCrackin and Ziels exchanged pleasantries, he asked her to lend him some money. Ziels, who had loaned money to McCrackin in the past, agreed to do so. They drove to an automated teller machine, where Ziels withdrew $100, giving $80 of it to McCrackin. They did not discuss when McCrackin had to repay the money. The two then went their separate ways.
Ziels returned home, intending to lie down before going to work. However, at about 11:00 a.m., she heard someone beating on the door, on the bedroom window, and at the back of the house. When Ziels opened the door, McCrackin was there. He pushed his way into Ziels' house, grabbed hold of her arms, and pushed her into the foyer. After trying unsuccessfully to push her towards a bedroom, he pulled her into the living room and threw her on the couch. In spite of Ziels' plea, "don't do this," McCrackin removed her shorts and panties, and pulled down his sweatpants and underwear. He got on top of Ziels and engaged in vaginal intercourse with her.
When McCrackin stood up, Ziels grabbed her shorts and panties, ran into a bathroom and locked the door. Ziels heard McCrackin walking around and the toilet flush in the master bedroom. When she was sure he had left, Ziels made several telephone calls for help, including one to 911.
When Fairfield Township police officers arrived at her home, Ziels told them McCrackin had raped her. Ziels was taken to the hospital where she was examined by Amy Abner, a sexual assault nurse examiner, who specializes in treating victims of sexual assault. Abner observed red marks on both of Ziels' arms, and areas of redness and petechial bruising on Ziels' vaginal opening and cervix.
McCrackin was arrested later that same day. During an inventory search of his automobile, police discovered a debit card with Ziels' name on it. When interviewed by Detective Captain Alan Laney, McCrackin explained that Ziels had given him the debit card so that he could collect money she owed him for some diet pills he had sold her. McCrackin also told Laney about several photographs of Ziels and her husband in sexually compromising positions, which he had secreted under the floor mat on the passenger side of his automobile. McCrackin claimed Ziels had given him the photographs as a symbol of their friendship.
When Laney made it clear to McCrackin that he was being investigated for rape, McCrackin asked for an attorney. Laney then asked McCrackin for his consent to retrieve the photographs of Ziels and her husband from his automobile. McCrackin granted Laney permission to retrieve the photographs, signing a handwritten "consent to search" form. In one of the photographs, a picture of Ziels' head had been cut off.
McCrackin was indicted for rape pursuant to R.C. 2907.02(A)(2). McCrackin moved to suppress the statements he made to police and the items seized from his automobile on the grounds that they were illegally obtained. The motion was denied following a hearing.
At McCrackin's trial, the state presented the testimony of Ziels, Abner and Laney, among others, who testified to the facts set forth above. Ziels also testified that the debit card found in McCrackin's car had been on a table in her living room, and that the photographs recovered from McCrackin's automobile had been in a box in her master bedroom's closet. Ziels testified that she did not give either the debit card or photographs to McCrackin.
McCrackin testified on his own behalf. His version of events was as follows: He had been to Ziels' house at least ten times, and had met with Ziels at various places, including the nursing homes where they both worked, and at the YMCA. He sold Ziels "diet drugs" on three occasions. His relationship with Ziels' progressed to the point where Ziels would allow him to kiss her, and they would fondle each other's genitals. According to McCrackin, Ziels had given him the pictures of her and her husband engaging in sex as a "symbol" of their friendship, and because she and McCrackin had never actually engaged in sexual intercourse with each other.
McCrackin testified that he contacted Ziels two days prior to the date of the alleged rape to remind her she owed him $100 for 20 Diatrex pills (speed) he had sold her. Ziels gave him her debit card so that he could get the money she owed him. After discovering he could not obtain money from the debit card, he called Ziels, who told him that she would have the money on April 13.
McCrackin testified that on April 13, 2000 he traveled to Ziels' home, and then the two of them traveled separately to an ATM. Once there, he got into Ziels' automobile. Ziels withdrew the money she allegedly owed McCrackin, and gave it to him. The two then went their separate ways.
McCrackin testified that after he had left Ziels, he noticed that a bottle of Diatrex pills worth about $200, which he had been carrying in his coat pocket, was missing. After concluding the pills must have fallen out of his pocket when he was in Ziels' automobile, McCrackin called her twice. When she did not answer, he left a "nasty message" on her answering machine, threatening to show her husband the photographs she allegedly had given him unless she returned the pills to him. According to McCrackin, Ziels called him back immediately and agreed to leave his bottle of Diatrex "outside of her door, under her floor mat."
McCrackin testified that he traveled to Ziels' home and retrieved his pills from under the floor mat. According to McCrackin, Ziels came to the door wearing only a T-shirt and panties. McCrackin apologized to Ziels for leaving the "nasty" message. Then, according to McCrackin, the two began kissing, went inside the house, and had consensual sex on the living room couch. McCrackin testified that this was the first time he and Ziels engaged in vaginal intercourse. McCrackin said the two did not say anything to each other after he entered the house, and that he left her a "line" of powdered cocaine worth about two or three dollars before leaving.
On rebuttal, Ziels testified that she and McCrackin had never had any form of sexual contact prior to the date of the alleged rape, and she reiterated that McCrackin had raped her.
The jury convicted McCrackin of rape. The trial court sentenced him to a three-year prison term and fined him $4,000.
McCrackin appeals, raising two assignments of error.
Assignment of Error No. 1:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS."
McCrackin argues the trial court erred by overruling his motion to suppress the photographs seized from his automobile. McCrackin points out that Laney asked for his consent to search his automobile for the photographs after he had invoked his right to counsel. McCrackin contends that when he invoked his right to counsel, all custodial interrogation should have ceased, including Laney's request to search his automobile for the photographs. We find this argument unpersuasive.
"Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver or himself renews communication with the police." State v. Knuckles, 65 Ohio St.3d 494,1992-Ohio-64, paragraph one of the syllabus. See, also, Edwards v.Arizona (1981), 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-1885. Nevertheless, the police may seek a waiver of an accused's Fourth Amendment right against unreasonable searches and seizures even after the accused has invoked his Fifth Amendment right to counsel. State v.Childress (1983), 4 Ohio St.3d 217, paragraph two of the syllabus, distinguishing Edwards v. Arizona. See, also, State v. Tinch (1992),84 Ohio App.3d 111, 121. When an accused waives his Fourth Amendment rights, a court need determine only that his consent to the search was voluntary under the totality of the surrounding circumstances. Childress
at 219.
Here, Laney was permitted to seek a waiver of McCrackin's Fourth Amendment right against a warrantless search and seizure even after McCrackin invoked his Fifth Amendment right to have counsel present during custodial interrogation. And there was sufficient evidence presented to show that McCrackin's waiver of his Fourth Amendment rights was voluntarily given. Laney testified that McCrackin wanted him to obtain the photographs, apparently, in the belief they would help prove his sexual encounter with Ziels was consensual. (Emphasis added.) Accordingly, McCrackin's first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED THE STATE TO INTRODUCE EVIDENCE REGARDING APPELLANT'S PRIOR `BAD ACTS.'"
McCrackin argues the trial court erred by allowing the prosecution to introduce evidence of his prior conviction for domestic violence. The state contends that it introduced evidence of McCrackin's prior conviction for impeachment purposes pursuant to Evid.R. 609(A)(3),[1]
and that if the trial court erred in admitting the evidence, the error was harmless.
In November 1996, McCrackin was convicted in the Hamilton Municipal Court of two counts of domestic violence pursuant to R.C. 2919.25. McCrackin received a six-month sentence on each count, to be served consecutively, with the sentences suspended, apparently, on the condition that McCrackin attend classes on preventing domestic violence.
At McCrackin's trial on the rape charge, the prosecutor was permitted, over defense counsel's objection, to ask McCrackin if he had been convicted of domestic violence, and McCrackin answered in the affirmative.
Evid.R. 609 provides in relevant part:
 "(A) General Rule. For the purpose of attacking the credibility of a witness:
"* * *
 "(3) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance."
Under Evid.R. 609(A)(3), "all convictions for crimes involving dishonesty or false statement, regardless of the possible punishment, are admissible for purposes of impeaching witnesses." Weissenberger's Ohio Evidence (2002), 258, Section 609.5. Evid.R. 609(A)(3) "does not attempt to delineate precisely which offenses may be characterized as supporting convictions involving `dishonesty or false statement.'" Id. Nevertheless, while convictions for offenses like perjury, subornation of perjury, bribery, false statement, criminal fraud, embezzlement, false pretense or concealment clearly fall within the scope of Evid.R. 609(A)(3), offenses solely involving force, assault, disorderly conduct, criminal damaging, public intoxication or driving under the influence clearly do not. Id. at 259.
McCrackin's conviction for misdemeanor domestic violence was not admissible pursuant to Evid.R. 609(A)(3), because domestic violence is not an offense involving dishonesty or false statement. See State v.Glover (Aug. 15, 1988), Clermont App. No. CA85-12-106. Therefore, we conclude the trial court erred in allowing the prosecutor to question McCrackin about his prior conviction for misdemeanor domestic violence. However, we also conclude that the trial court's error was harmless under the facts of this case.
Error not involving the violation of the accused's constitutional rights is harmless where there is substantial other evidence to support the guilty verdict. See State v. Webb, 70 Ohio St.3d 325, 335,1994-Ohio-425, and State v. Davis (1975), 44 Ohio App.2d 335, 346-348.
McCrackin argues the trial court's error was prejudicial because the trial's outcome hinged essentially on whether the jury believed Ziels' word that he had raped her, or his word that their sexual encounter was consensual. In support of his argument, McCrackin points to several inconsistencies in the state's testimony, which, McCrackin asserts, tended to undermine Ziels' credibility. This testimony included Ziels' acknowledgment that she lent money to McCrackin without discussing when it needed to be repaid, despite her professed discomfort about being around him. McCrackin also mentions that, at trial, Ziels testified that he did not attempt to kiss her until after he had raped her, while Nurse Abner testified that Ziels had said he kissed her all over her face when she turned her head to the side. McCrackin also asserts that the fact he possessed the photographs of her and her husband engaging in sex, which she allegedly gave to him, corroborated his testimony that he and Ziels had engaged in intimate sexual contact prior to the date of the alleged rape.
However, Ziels' testimony showed that McCrackin had an opportunity to take the photographs from Ziels' house when she was hiding in her bathroom following the rape. Furthermore, McCrackin's explanation as to why Ziels gave him the photographs is implausible. McCrackin testified that Ziels "gave me the pictures to, uh, since we had never engaged in actual, uh, intercourse, that she wanted to give me these pictures of me [sic] to, uh, be a symbol of some type of friendship."
In fact, several aspects of McCrackin's version of events are implausible. For instance, McCrackin asserted that he and Ziels engaged in consensual sexual activity, including, for the first time, vaginal intercourse, after Ziels — according to McCrackin's account — had tried to withhold from him $200 worth of illicit drugs that belonged to him. McCrackin also alleged that this consensual sexual relationship occurred after he had left Ziels a "nasty message" in which he "cussed her out," and had threatened to show Ziels' husband the photographs that Ziels allegedly had given him.
The trial court did not permit the state to question McCrackin about the details of his domestic violence conviction. Furthermore, McCrackin did not try to present himself as a "nice guy" who had simply been wrongly accused. Instead, McCrackin essentially acknowledged that he was a drug dealer, and referred to Ziels at one point as a "good customer."
Also, Detective Laney, who has 25 years of law enforcement experience, described Ziels' conduct following the rape as being "completely" consistent with someone who had just been raped. When Laney first arrived at the crime scene, he asked Ziels if she wanted sit down on the living room couch, unaware at the time that she had just been raped there. Ziels refused to sit on the couch, saying, "I'm not going over there"; she sat on the floor in the foyer, instead.
Additionally, Abner testified that Ziels had red marks on both of her arms, which corroborated Ziels' testimony that McCrackin had gained entry into her house by grabbing her arms and pushing her back into the foyer, and then pulling her to the living room couch after trying unsuccessfully to push her towards the bedrooms. The state also presented photographs taken by Abner during her pelvic examination of Ziels, showing areas of redness and petechial bruising at Ziels' vaginal opening and on her cervix.
In light of the evidence presented in this case, we conclude the trial court's erroneous admission into evidence of McCrackin's prior conviction for domestic violence was harmless.
McCrackin's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] In its appellate brief, the state actually cited Evid.R. 609(A)(2), but it is clear from the remainder of its argument that it meant to refer to Evid.R. 609(A)(3).