JOURNAL ENTRY AND OPINION
Anthony Walker ("applicant"), through counsel, filed a timely Application for Reopening on February 14, 2000. Applicant is attempting to reopen the judgment of this court in State v. Walker
(Nov. 15, 1999), Cuyahoga App. No. 74773, unreported, which affirmed applicant's convictions of aggravated burglary, aggravated robbery, attempted murder, kidnapping of two people, and aggravated murder in the course of aggravated burglary or robbery, all with firearm specifications. The prosecutor filed a Memorandum of Law in Opposition to the Application for Reopening. For reasons argued by the prosecutor and for those that follow, we deny the Application for Reopening.
 TRIAL, APPEAL, AND SECOND TRIAL
The facts are as follows:
 Defendant [who is the applicant seeking reopening of his appeal] was charged with complicity along with six co-defendants in the killing of Derrick Harris during a burglary occurring on April 30, 1991. He was originally tried and found guilty by a jury in 1991 leading to imposition of the death penalty. His original conviction was reversed by this Court on appeal due to ineffective assistance of counsel in failing to seek suppression of evidence seized from defendant's premises without warrant or consent. State v. Walker (Oct. 28, 1993), Cuyahoga App. No. 62862, unreported. The evidence at his second trial leading to this appeal will be summarized below.
 The State's first witness was Relana English who met defendant in 1991 and was frequently at defendant's house on East 118th and Union Avenue. Regular patrons at these affairs include [sic] Marvin, Willie and Eddie Burrage, their step-brothers, David and Craig Thomas, and English. English was Marvin Burrage's girlfriend at the time. Others who came to defendant's house included Annette Dean and the victim's girlfriend, Angela Harvey.
 English knew Derrick Harris, the victim, since 1989. About six or seven days prior to the victim's death on April 30, 1991, English, Angela Harvey, Annette Deane and the defendant were at the defendant's house when a discussion regarding the victim occurred. Angela stated that the victim had a lot of money to buy a truck and she knew that he had the money in the house because she had seen it. She also explained where people were living in the victim's house.
 On April 30, 1991, at 1:40 a.m., English went to defendant's house. When she arrived, defendant, Marvin Burrage, Craig Thomas, David Thomas, two other men and one woman were all standing outside. English followed the group in her car as they drove to East 81st and Kinsman. The two men, one later identified as Steve Cox (a.k.a. "Coz") and the woman drove separately in a maroon car. When they arrived, Marvin Burrage, Eddie Burrage, Craig Thomas, David Thomas and Coz got out of their cars and went into a house. Defendant stayed in his car. Approximately ten minutes later, English heard a gunshot and the men ran back to their cars. All the cars then proceeded back to defendant's house.
 At defendant's house, defendant asked English where the victim, Derrick Harris, lived and she agreed to show him. Prior to leaving, English saw three Tec-9 firearms on defendant's bed. The group then left defendant's house and proceeded to the victim's house at 11216 Lardet Avenue. English drove her car along with Jason Peterson, Willie Burrage and Eddie Burrage. Defendant parked about six houses down from the victim's house and the group walked to the house. English and the defendant remained at the cars. About fifteen minutes later, the group returned from the victim's house and they all went back to defendant's house. At defendant's house, the group discussed the victim's beating and what items they took from the victim and his house. The items English observed included a cellular phone, a briefcase, some jewelry, bottles of wine and a black pouch. Defendant divided up the stolen money between the group. English received $40 from defendant for driving the truck. Defendant then collected the guns and brought them to his room.
 The next day, English learned of Derrick Harris' death and the death of another man at East 81st and Kinsman.
 Frances Harris, the victim's mother, testified that she lived at 11216 Lardet Avenue with her brother, Walter Harris, and her son, Derrick Harris. On April 30, 1991, at approximately 3:00 a.m., two men pulled her out of bed and told her to wake everyone in the house up at gunpoint. After she woke up her brother and her son, they pushed Mrs. Harris to the floor and shot her in the stomach. They proceeded to beat her son as they asked him for money. She later found her son laying face down dead on her mattress. When she returned to her house after the hospital, she noticed several things missing, including bottles of wine and her cellular phone.
 Annette Deane testified she was also at defendant's house when defendant and English discussed the victim, Derrick Harris, and his money for a truck. She testified that they discussed robbing the victim. After hearing this discussion, she told the victim "to watch his back, to be careful." She warned the victim to watch' out for English and the defendant. Deane testified that during March and April, 1991, she had seen Tec-9 weapons at defendant's house on more than one occasion.
 Walter Harris, the brother of Frances Harris and uncle of Derrick Harris, also testified. He lived on the second floor of Frances' house on Lardet Avenue and Derrick lived on the third floor. On April 30, 1991, at approximately 3:00 a.m., he was awakened by Frances knocking on Derrick'[s] door. When Walter went to his door, he observed a man holding a gun to Frances' head. Walter was immediately told to look at the floor and he was taken upstairs to the bathroom of Derrick's apartment. When they arrived in the bathroom, the men pushed him down and put a rug over his head. After the men left, he discovered Frances had received a gunshot wound and Derrick had been shot dead.
 Cleveland Detective Sahir Hasan testified that on May 10, 1991, he was conducting a surveillance for the police department. He observed defendant and Steve "Coz" Cox looking in the trunk of Cox's automobile on the corner of East 118th Street and Union. After backup police units arrived, the men were arrested and two semiautomatic Tec-9 guns and a chrome .357 magnum were confiscated from the trunk of the car.
 Marvin Burrage testified that in 1991 he pled guilty to aggravated murder in the death of Derrick Evans. Marvin Burrage testified that he met defendant in 1990 and thereafter, he began selling drugs for defendant and spending a lot of time with him.
 Marvin Burrage testified that on April 30, 1991, he participated in two "licks" or robberies. Earlier that day, Marvin was at defendant's house when defendant told him to take Dorian Brown, a.k.a. Drum, home to get his gun, a Tec-9. Defendant told them that he planned to rob a "fat guy" who had "money all around the house and dope in the refrigerators." Defendant stated that two guys lived downstairs and they would have to kick in the door and take them out. Defendant passed out his weapons to the group. Drum got defendant's Magnum .380. Jason Peterson got defendant's Tec-9. Craig Burrage got Drum's Tec-9 and an Uzi.
 At defendant's direction, the group left his house and drove in various cars to a house on 83rd Street. The group drove to the house in English's truck, defendant's rental car and Dorian Brown's car. After they arrived, English and defendant stayed in the cars. Jason Peterson kicked in the door and Drum shot the man in the house. They proceeded to beat him. The group looked around for dope and money, but did not find any. Craig then shot the man in the head and they ransacked the house. The group went back to the cars and returned to defendant's house. Marvin told defendant that they had killed the occupant and "there wasn't no money in the house." Defendant then told English to call Derrick Harris and see if he was home. She called twice and when he answered, she hung up. Defendant then stated, "He's soft, they ain't got no weapons. We going to do it anyway."
 The group, along with defendant, took the guns again and left defendant's house. Marvin Burrage drove with defendant as English led the way to the victim's house. Defendant and English again stayed at the cars. Jason Peterson kicked in the back door and the group entered the house with their guns drawn. Marvin testified that they dragged Frances Harris upstairs and began stomping and beating Derrick Harris. They also took Walter Harris upstairs, put him in the bathroom and put a rug over him. While the group was searching for the money, Marvin's step-brother, David, shot Frances Harris. Jason then kicked Derrick Harris down the stairs and Marvin brought him into his mother's bedroom where Marvin's stepbrother, Craig, shot him.
 The group again went back to defendant's house. Marvin gave defendant the stolen money, and he divided it up. They divided up other items and left the guns at defendant's house.
 Subsequently, two weeks prior to defendant's trial, defendant asked Marvin Burrage not to testify. Marvin had previously lied under oath in another case because one of defendant's friends had raped Marvin's wife.
 Det. William Cunningham of the Cleveland Police Homicide Unit testified that in early June 1991, Ronetta Johnson, Craig Thomas' girlfriend and defendant's former girlfriend, came to him with the first lead in the Derrick Harris homicide. As a result, Det. Cunningham interviewed Marvin Burrage.
 Det. Cunningham testified that around June 10, 1991, the police were doing surveillance on a building at East 79th Street and Kinsman. They had the pager number of the victim, Derrick Harris, whose pager had been stolen. Det. Cunningham paged the number. When David Thomas came out of the house with the pager to answer the page at a nearby public phone, the police arrested him. Willie Burrage was also arrested at this time.
 According to Cunningham, Jason Peterson was arrested next on June 13, 1991, at the YMCA on 119th and Miles. The defendant had informed the police of Peterson's whereabouts. On June 17, 1991, defendant was arrested at the Justice Center while wearing Derrick Harris' ring and watch. English was arrested on June 23, 1991. Craig Thomas was arrested sometime in July, 1991. Around May 10, 1991, two Tec-9 weapons were confiscated from defendant's house in regards to the police investigation. After the State rested its case, the defense did not call any witnesses to testify.
 At the conclusion of all the evidence, the jury was instructed and it began its deliberations. The jury found defendant guilty on all counts plus the firearm specifications, except for the aggravated murder count with prior calculation and design. On February 13, 1996, a sentencing hearing was held where the court imposed the agreed sentence of thirty-three years to life.
State v. Walker (Nov. 15, 1999), Cuyahoga App. No. 74773, unreported, 2-9.
Applicant was represented at trial by James Willis, John Stanard and Britta Barthol. Judge Burt Griffin, who presided over applicant's second trial, appointed James Willis and the Appellate Division of the Cuyahoga County Public Defenders' Office to represent applicant on appeal.
 SECOND APPEAL
Appellate counsel raised the following five assignments of error:
 I. BY REFUSING TO DECLARE A MISTRIAL AFTER THE STATE SUPPORTED DEFENSE COUNSEL'S MOTION FOR MISTRIAL, THE TRIAL COURT VIOLATED ANTHONY WALKER'S RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 II. BECAUSE THE JURY WAS NOT INSTRUCTED PROPERLY UNDER R.C. 2903.01(D) IN DETERMINING THE CULPABLE MENTAL STATE REQUIRED FOR AN AGGRAVATED MURDER CONVICTION UNDER R.C. 2903.01(B), THE JURY'S GUILTY VERDICT WAS UNRELIABLE AND ANTHONY WALKER WAS DEPRIVED OF DUE PROCESS RIGHTS GUARANTEED UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 III. COUNSEL'S FAILURE TO OBJECT TO AN INCOMPLETE JURY INSTRUCTION WHICH WENT TO THE HEART OF ANTHONY WALKER'S CONVICTION FOR AGGRAVATED MURDER DEPRIVED MR. WALKER OF EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION AND IMPAIRED APPELLANT'S RIGHT TO APPELLATE REVIEW BY FAILING TO JOURNALIZE APPELLANT'S CONVICTION FOR OVER TWO YEARS DURING WHICH TIME ESSENTIAL PARTS OF THE RECORD WERE LOST.
 V. BY ALLOWING ABUNDANT IRRELEVANT EVIDENCE AND CHARACTER EVIDENCE, THE TRIAL COURT VIOLATED EVIDENCE RULES 402, 403 AND 404(B), AND UNDERMINED THE RELIABILITY OF ANTHONY WALKER'S TRIAL IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
This court found no reversible error and affirmed applicant's convictions.
 APPEAL TO SUPREME COURT OF OHIO
New counsel for applicant, John P. Parker, filed a notice of appeal in the Supreme Court of Ohio on December 30, 1999. In the notice of appeal, which is contained in our appellate file, counsel designated that the case raised a substantial constitutional question, involved a felony conviction, and was one of public or great general interest. Counsel did not indicate in the application for reopening, nor is this information contained in our appellate file, what issues were proposed to the Supreme Court of Ohio. The prosecutor, however, suggested in her opposition memorandum that applicant's counsel raised the following two propositions of law in a memorandum in support of jurisdiction:
 I. The trial court must instruct a jury to the definition of "not conclusive" contained in R.C. 2903.01(D). The trial court's failure to define "not conclusive" is a violation of due process under the Fourteenth Amendment of the U.S. Constitution.
 II. A trial court commits prejudicial error when it admits into evidence weapons and ammunition clearly not linked to the indictment in violation of the due process clause of the Fourteenth Amendment.
The prosecutor did not support her allegation, however, with any evidence. See App.R. 26(B)(3). On March 15, 2000, after considering the jurisdictional memoranda filed in the case, the Supreme Court of Ohio denied applicant leave to appeal and dismissed the appeal as not involving any substantial constitutional question. State v. Walker (2000), 88 Ohio St.3d 1444,725 N.E.2d 285.
 REOPENING
John Parker, the same attorney who represented applicant in his appeal to the Supreme Court of Ohio, also filed the within Application for Reopening. In State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204, the Supreme Court of Ohio established that a claim of ineffective assistance of appellate counsel may be barred from review on res judicata principles unless circumstances render the application of the doctrine of res judicata unjust. The issue of whether appellate counsel provided effective assistance must be raised at the earliest opportunity to do so. State v.Williams (1996), 74 Ohio St.3d 454, 659 N.E.2d 1253. In the case at bar, applicant possessed an earlier opportunity to contest the performance of his appellate counsel in a claimed appeal of right to the Supreme Court of Ohio. The Constitution of the State of Ohio provides, in relevant part, that:
The supreme court shall have appellate jurisdiction as follows:
 (a) In appeals from the courts of appeals as a matter of right in the following:
* * *
 (ii) Cases involving questions arising under the constitution of the United States or of this state.
Section 2(B)(2)(a)(ii), Article IV, Ohio Constitution. The question of whether appellate counsel on a direct appeal of right rendered ineffective assistance is a question arising under the federal constitution. Evitts v. Lucey (1985), 469 U.S. 387,105 S.Ct. 830, 83 L.Ed.2d 821. As such, pursuant to the Ohio constitution, a case involving the federal constitutional issue of whether appellate counsel was ineffective may be appealed to the Supreme Court of Ohio as a matter of right. An appeal of this type is a "claimed appeal of right" according to Rule II, Section 1(A)(2) of the Rules of Practice of the Supreme Court of Ohio.
An appeal raising a federal constitutional issue is not a "discretionary appeal" pursuant to Rule II, Section 1(A)(3) of the Rules of Practice of the Supreme Court of Ohio. The designation "discretionary appeal" invokes the discretionary jurisdiction of the Supreme Court of Ohio and is available for felony cases involving nonconstitutional questions, such as the admissibility of evidence pursuant to statute, see Klein v. Cardwell (C.A.6, 1971),448 F.2d 407, or for appeals involving a question of public or great general interest. See S.Ct.Prac.R. II(1)(A)(3)
Claims of ineffective assistance of counsel on appeal, like most other claims in litigation, must be raised at the earliest opportunity to do so. See State v. Williams (1996), 74 Ohio St.3d 454,659 N.E.2d 1253. When, as in this case, a defendant obtains new counsel to pursue an appeal from a decision of this court to the Supreme Court of Ohio, or when a defendant chooses to proceed pro se to the Supreme Court of Ohio after being represented by counsel, the earliest opportunity to raise the federal constitutional claim of ineffective assistance of appellate counsel, absent extraordinary circumstances, would be in a claimed appeal of right. The failure to do so operates as a bar to any further review of the ineffective assistance claim under the principles of res judicata, unless there is a demonstration under an applicant's circumstances that the application of res judicata
would be unjust. State v. Dehler (1995), 73 Ohio St.3d 307,652 N.E.2d 987; State v. Terrell (1995), 72 Ohio St.3d 247,648 N.E.2d 1354; State v. Eskridge (May 24, 1999), Cuyahoga App. No. 73673, unreported, reopening disallowed (Nov. 24. 1999), Motion No. 9162, appeal dismissed (Mar. 16, 2000), Sup.Ct. No. 00-10; State v.Borrero (Apr. 29, 1996), Cuyahoga App. No. 69289, unreported, reopening disallowed (Jan. 22, 1997), Motion No. 73559.
In this case, applicant obtained new counsel to pursue an appeal to the Supreme Court of Ohio. New counsel filed a notice of appeal in the Ohio supreme court on December 30, 1999. The federal constitutional issue of ineffective assistance of appellate counsel either was raised or could have been raised by new counsel in applicant's appeal. At this earliest opportunity, had new counsel raised the issue and established a substantial constitutional question with respect to applicant's appellate representation, the Supreme Court would have allowed the appeal. Sup.Ct.Prac.R. III(6)(A). New counsel has not demonstrated why it would be unjust to apply the principles of res judicata now to bar further review of this claim. Consequently, because the issue of whether appellate counsel was ineffective either was raised or could have been raised previously, res judicata now precludes any further litigation of this claim. Dehler, Terrell, Eskridge, Borrero,supra.
We also deny the application for reopening for the following additional reasons. An application for reopening will be granted "if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5); State v. Linen (May 10, 1999), Cuyahoga App. Nos. 74070 and 74071, unreported, reopening granted (Feb. 17, 2000), Motion No. 8969; State v. Hull (Mar. 30, 1987), Cuyahoga App. No. 51853, unreported, reopening granted (Oct. 1, 1993), Motion No. 33708, convictions reaffirmed (Aug. 11, 1994), affirmed (1994), 71 Ohio St.3d 292,643 N.E.2d 546. In making this determination, we apply the two-prong analysis found in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. State v. Reed
(1996), 74 Ohio St.3d 534, 660 N.E.2d 456. The Strickland standard requires the following:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
466 U.S. 687-688, 104 S.Ct. at 2064; see State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
Appellate counsel is not ineffective necessarily for failing to raise a claim of error. Appellate counsel has no constitutional duty to raise every conceivable assignment of error on appeal.Jones v. Barnes (1983), 463 U.S. 745, 103 S.Ct. 3308,77 L.Ed.2d 987; State v. Gumm (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253; see State v. Campbell (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339. In fact, "[a] brief that raises every colorable issue runs the risk of burying good arguments * * * in a verbal mound made up of strong and weak contentions." Jones, 463 U.S. at 753, 103 S.Ct. at 3313. "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every `colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy * * *." Jones, 463 U.S. at 754,103 S.Ct. at 3314; see State v. Rojas (1992), 64 Ohio St.3d 131, 141-142,592 N.E.2d 1376; State v. Watson (1991), 61 Ohio St.3d 1, 15-16,572 N.E.2d 97. Consequently, absent an egregious omission, the mere failure to present a specific assignment of error in addition to others raised on appeal will not constitute deficient performance of appellate counsel, that is, performance falling below the norms of the profession.
The key factor in any determination of ineffective assistance of counsel is prejudice. Prejudice is presumed only in situations where the lack of assistance by counsel is tantamount to the denial of counsel on appeal. Penson v. Ohio (1988), 488 U.S. 75,109 S.Ct. 346, 102 L.Ed.2d 300. Otherwise, an applicant must show that there was a reasonable probability of success on appeal, had the particular assignment(s) of error been asserted. Reed, 74 Ohio St.3d 534; see Sharp v. Puckett (C.A.5, 1991), 930 F.2d 450,452-453. Counsel's omission of "a dead-bang winner" assignment of error, even though zealously pressing other strong but unsuccessful claims of error, could render counsel's assistance constitutionally ineffective. Page v. United States (C.A.7, 1989.), 884 F.2d 300,302.
When making a determination of whether an applicant received effective assistance of counsel[1], it is not necessary that a court evaluate whether counsel's performance was deficient prior to deciding whether an applicant suffered prejudice. See Strickland,104 S.Ct. at 2069-70. If it is easier to dispose of a claim of ineffective assistance based upon a lack of demonstration of prejudice, that course is preferable in order to avoid the appearance of grading an attorney's performance, which is not the objective of an ineffective assistance of counsel claim. Id. at 2070.
Counsel contends appellate counsel in applicant's second direct appeal to this court was ineffective for failing to raise the following assignments of error:
 I. THE TRIAL COURT DENIED THE APPLICANT DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND THE APPLICANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS WHEN AN ACQUIT FIRST JURY INSTRUCTION WAS GIVEN AND COUNSEL FAILED TO OBJECT;
 II. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON ADDICT/INFORMANT TESTIMONY DENIED THE APPELLANT DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION;
 III. PROSECUTORIAL MISCONDUCT IN THE FINAL CLOSING ARGUMENT DENIED THE APPELLANT OF DUE PROCESS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND COUNSEL'S FAILURE TO OBJECT DENIED THE APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION;
 IV. THE EVIDENCE THAT THE APPLICANT HAD THE SPECIFIC INTENT NECESSARY TO CONVICT HIM OF AGGRAVATED MURDER IS INSUFFICIENT AND VIOLATES THE APPLICANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION; AND
 V. THE CONVICTION FOR AGGRAVATED MURDER AND ATTEMPTED MURDER IS AGAINST THE WEIGHT OF THE EVIDENCE.
In his affidavit with respect to these assignments, counsel averred as follows:
 1. I am a licensed attorney in good standing in the State of Ohio. My registration number is 0041243.
 2. I have read the transcript in the case of State of Ohio v. Anthony Walker, CA 74773. It is my professional opinion that Mr. Walker was denied effective assistance of counsel on his direct appeal to the Eighth District Court of Appeals. I am familiar with the standards of effective assistance of counsel set forth in Strickland v. Washington (1984), 466 U.S. 668 and State v. Bradley (1989), 42 Ohio St.3d 136. Had the issues contained in this application been raised on direct appeal, there is a reasonable probability that this court would have reversed Mr. Walker's' convictions for at least attempted murder and aggravated murder. There is also a reasonable probability that Mr. Walker would have been granted a new trial.
 3. The issues raised in the Application for Reopening are not frivolous. Each issue has authority supporting it as detailed in the Application.
 4. Prior appellate counsel's performance did not provide Mr. Walker with the effective assistance of counsel on appeal as required under Evitts v. Lucy
(1985), 469 U.S. 387.
FURTHER AFFIANT SAITH NAUGHT.
We agree with the prosecutor that counsel's affidavit is insufficient.
An application for reopening is required to contain a sworn statement providing (1) the basis for the claim that counsel's performance was deficient regarding the proposed assignments of error or arguments raised and (2) the manner in which the alleged deficiencies of appellate counsel prejudicially affected the outcome of applicant's direct appeal. App.R. 26(B)(2)(d). InState v. Johnson (Dec. 14, 1998), Cuyahoga App. No. 72541, unreported, reopening disallowed (May 27, 1999), and most recently in State v. Jells (May 1, 1989), Cuyahoga App. No. 54733, unreported, affirmed (1990), 53 Ohio St.3d 22, 559 N.E.2d 464, reopening denied (Apr. 26, 2000), Motion No. 4594, this court found affidavits of counsel that contained only conclusive statements to be insufficient. The affidavit of counsel herein containing conclusions of appellate counsel's ineffectiveness is likewise insufficient to satisfy the requirements of the rule and does not assist this court in evaluating applicant's claims.
This court is also handicapped in previewing the proposed assignments of error in the absence of the trial court record in this case. Counsel avers in his affidavit that he read the transcript of applicant's trial and, in fact, cites to various pages of the transcript, but counsel has not included any copies or portions of the transcript with the application for reopening for our review. Appellate R. 26(B)(2)(c) requires that an application for reopening contain "any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies." The burden of providing the record in an application for reopening is on the applicant. State v. Ayala (1996), 111 Ohio App.3d 627,676 N.E.2d 1201. The transcript and other papers from a lower court that comprise a record on appeal are not maintained by the appellate court at the conclusion of an appeal, but are returned to the lower court. App.R. 30(B). When an applicant or counsel has the trial court record available to either one, it is incumbent that applicant or counsel provide the record relied upon to the court in the application for reopening. State v. McNeill
(1998), 83 Ohio St.3d 457, 700 N.E.2d 613. According to his affidavit, counsel herein had the transcript available to him, but he neglected to furnish any relevant pages with the application. Without any additional record of what occurred at trial other than what is contained in the appellate opinion and retained in the appellate file, and absent any additional information in counsel's affidavit, the application for reopening fails to support the claim of ineffective assistance of appellate counsel.
With respect to applicant's proposed assignments of error one through three, we note that Mr. Willis, who was one of applicant's appointed appellate attorneys, also represented applicant at trial. Neither party to the application for reopening produced any evidence as to the extent of Mr. Willis' representation on appeal, and this court will not speculate that counsel did not actively participate. Consequently, because attorneys are not expected to raise an issue on appeal as to their own effectiveness at trial, the postconviction remedies provide the appropriate avenue for such a challenge under these circumstances. State v. Fuller (Nov. 8, 1993), Cuyahoga App. Nos. 63987, 63988, unreported, reopening disallowed (Oct. 14, 1994), Motion No. 56538; State v. Tinch
(1992), 84 Ohio App.3d 111, 616 N.E.2d 529; State v. Lambrecht
(1989), 58 Ohio App.3d 86, 568 N.E.2d 743; State v. Jells (May 1, 1989), Cuyahoga App. No. 54733, unreported, affirmed (1990),53 Ohio St.3d 22, 559 N.E.2d 464, reopening denied (Apr. 26, 2000), Motion No. 4594.
Finally, notwithstanding the deficiencies noted above, applicant's fourth and fifth proposed assignments of error alleging insufficient evidence and a verdict contrary to the weight of the evidence, respectively, are not issues that had a reasonable probability of success, had they been asserted on appeal. This court, which included two of the same panel members, after reviewing applicant's trial transcript at the time of applicant's direct appeal, concluded that "there was overwhelming and highly persuasive evidence" to support applicant's convictions. Walker,
slip op. at 29. Applicant has not persuaded us otherwise.
Accordingly, the application for reopening is denied.
LEO M. SPELLACY, and JAMES M. PORTER, J., CONCUR.
 _________________________________ DIANE KARPINSKI, PRESIDING JUDGE
[1] The Sixth Circuit Court of Appeals considers the following inquiries when determining whether an attorney on direct appeal performed reasonably competently:
 (1) Were the omitted issues "significant and obvious"?
 (2) Was there arguably contrary authority on the omitted issues?
 (3) Were the omitted issues clearly stronger than those presented?
(4) Were the omitted issues objected to at trial?
 (5) Were the trial court's rulings subject to deference on appeal?
 (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
 (7) What was appellate counsel's level of experience and expertise?
 (8) Did the petitioner and appellate counsel meet and go over possible issues?
 (9) Is there evidence that counsel reviewed all the facts?
 (10) Were the omitted issues dealt with in other assignments of error?
 (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?
Mapes v. Coyle (C.A.6, 1999), 171 F.3d 408, 427-428. The court noted that the list was not exhaustive, but offered the inquiries merely as matters it considered when evaluating ineffective assistance of appellate counsel claims. We find the list instructive.