JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant, Lawrence McClutchen ("appellant"), appeals his conviction of aggravated murder in the death of Clarence Jackson, which occurred in 1989.
 {¶ 2} On October 26, 1989, Clarence Jackson's wife, Debra Jackson ("Debra"), approached appellant, a drug dealer, for cocaine. Although Debra did not have any money with which to purchase the cocaine, appellant gave her the cocaine "on credit" with the condition that she pay him the following day or appellant "would make an example out of her." The amount of money that Debra owed appellant was $120.
 {¶ 3} The following day and evening, appellant and his brother, Phillip McClutchen ("Phillip"), in a burgundy Chrysler Le Baron (later identified to be owned by appellant's girlfriend at the time, Linda Spencer), drove by and stopped at the Jackson's house on Temblett Avenue in Cleveland, apparently in search of the money Debra owed appellant. Because Debra still did not have the money and she was afraid that appellant would "make an example of her," she hid inside her house, had others answer the door for her, and any visitors were told that she was not home.
 {¶ 4} At approximately 8:00 p.m. on October 27, 1989, appellant and Phillip parked the Chrysler Le Baron ("the car") and waited by the Jackson's house. As he was walking to the store with his nephew, Clarence Jackson approached appellant (on the passenger side of the car) and the two men began fighting. Phillip (who was in the driver's seat in the car) got out of the car to assist appellant. Both appellant and Phillip were armed with .380 semi-automatic guns and both began shooting. Phillip aimed his gun and fired into the air, but appellant aimed and fired directly at Clarence Jackson. Appellant and Phillip returned to the car and drove down Temblett Avenue, but did not race off. Later that night, appellant and Phillip went to a bar for drinks.
 {¶ 5} Police officers arrived at the scene and began their investigation. Many shots were fired between the two guns: one was the fatal shot that hit Clarence Jackson in the back; some of the others punched bullet holes in the Jackson house. A total of 13 shell casings were found, but it was never determined which of the two guns fired the fatal shot that killed Clarence Jackson. The police interviewed numerous people (including Phillip) and, following up on those interviews, the police issued a warrant for the arrest of Phillip and appellant for aggravated murder. In 1990, Phillip pled guilty to involuntary manslaughter, was sentenced to 13 to 28 years in prison, and has served 13 years thus far.
 {¶ 6} After the grand jury completed its investigation in 1994, it indicted appellant, charging him with aggravated murder with a firearm specification for the murder of Clarence Jackson. Shortly thereafter, a capias was issued and a lengthy and worldwide investigation began to locate appellant. In 2000, the London police notified the Cleveland FBI that they believed they had appellant in custody. Appellant was lawfully extradited, tried in 2002, and found guilty of aggravated murder of Clarence Jackson with a firearm specification. He was sentenced to life in prison.
 {¶ 7} Appellant lists seven assignments of error. For the following reasons, we find appellant's appeal to be without merit.
 I. {¶ 8} Appellant's first assignment of error contends that the trial court committed prejudicial error when it denied appellant's motion to dismiss based on preindictment delay.
 {¶ 9} The test for preindictment delay, as held by the Supreme Court of Ohio in State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, at ¶ 51, is as follows:
 {¶ 10} "To warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay." See, also,State v. Gooden, Cuyahoga App. No. 81320, 2002-Ohio-2864, at ¶ 13;State v. Whiting (1998), 84 Ohio St.3d 215, 217, 702 N.E.2d 1199. "Thus, `the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.'" Walls at ¶ 51, quoting UnitedStates v. Lovasco (1977), 431 U.S. 783, 790.
 {¶ 11} Whether or not there has been "actual prejudice" involves "a delicate judgment based on the circumstances of each case." UnitedStates v. Marion (1971), 404 U.S. 307, 325. In making this determination, "courts are to consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." State v. Luck (1984), 15 Ohio St.3d 150, 154,472 N.E.2d 1097, citing Marion, 404 U.S. at 326.
 {¶ 12} Here, appellant asserts that the five years between the murder of Clarence Jackson in 1989 and appellant's indictment in 1994 caused some "key witnesses" to become unavailable to testify on his behalf and that any testimony at trial would be "inherently unreliable" as a result of "fading memories." In support of his assertion, appellant cites Doggett v. United States (1992), 505 U.S. 647 for the proposition that excessive delay presumptively compromises the reliability of a trial and that lower courts have found delays of one year presumptively prejudicial. However, unlike appellant's first assignment of error based on preindictment delay, the issue on appeal in Doggett was whether defendant-appellant's sixth amendment right to a speedy trial was violated. Also, unlike appellant's travels abroad since at least November 3, 1989 and no re-entry into the United States until his extradition in 2000, the defendant-appellant in Doggett returned to the United States and resided in Virginia for six years while authorities neglected to pursue him or trial. Doggett is simply inapplicable.
 {¶ 13} Appellant alleges "actual prejudice" exists because some "key witnesses" have become unavailable, but fails to identify those "key witnesses," and more importantly, fails to identify the subject matter of their testimony or that the building of his defense has been impaired. Moreover, appellant consciously chose to leave the United States on or about November 3, 1989 — seven days after Clarence Jackson was murdered — and consciously chose not to return. Appellant's choice to leave the country so close in time to the murder can reasonably be seen as an attempt to avoid prosecution, and not a coincidence. Thus, any delay between the murder and appellant's indictment (and subsequent trial) was caused by appellant's own actions.
 {¶ 14} "Although some prejudice may have occurred from evidence lost over the years," we conclude that appellant's claims of prejudice are speculative at best. Marion, 404 U.S. at 326. "To prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796. Because appellant has failed to show substantial prejudice as a result of the five years between the murder in 1989 and appellant's indictment in 1994, appellant's first assignment of error is not well-taken.
 II. {¶ 15} Appellant asserts in his second assignment of error that the trial court erred when it denied his request for disclosure of grand jury transcripts.
 {¶ 16} Rule 6(E) of the Criminal Rules of Procedure provides in pertinent part:
 {¶ 17} "Secrecy of proceedings and disclosure. Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * *"
 {¶ 18} The disclosure of grand jury testimony is controlled by Crim.R. 6(E) and release of such testimony is within the discretion of the trial court. State v. Muenick (1985), 26 Ohio App.3d 3, 5,498 N.E.2d 171. In State v. Greer (1981), 66 Ohio St.2d 139, 147,420 N.E.2d 982, the Supreme Court of Ohio held as follows:
 {¶ 19} "Generally, proceedings before a grand jury are secret and an accused is not entitled to inspect grand jury minutes before trial for the purpose of preparation or for purposes of discovery in general. This rule is relaxed only when the ends of justice require it, such as when the defense shows that a particularized need exists for the minutes which outweighs the policy of secrecy."
 {¶ 20} See, also, Muenick, 26 Ohio App.3d at 5 (following Greer).
 {¶ 21} In Greer, the Supreme Court of Ohio held that the determination of whether a particularized need for disclosure has been shown is a question of fact. "Where the trial court has issued a finding of fact based on testimony it has heard or affidavits it has reviewed, our province is not to disturb that finding unless a manifest miscarriage of justice exists." In re: Petition for Disclosure of Evidence Presentedto Certain Cuyahoga County Grand Juries in 1993 (Feb. 27, 1997), Cuyahoga App. No. 69941.
 {¶ 22} Here, appellant argues that he demonstrated a "particularized need" for disclosure of the grand jury transcripts simply because of the length of time between the murder and appellant's indictment and appellant's desire to compare the testimony before the grand jury with the trial testimony to assist in the preparation of the appellant's defense. However, appellant's assertion is more a request for mandatory discovery and not the type of "particularized need" that is required under Greer. "Ohio rules did not intend that the grand jury minutes be treated as any other statement for purposes of mandatory discovery by the defendant." Greer, 66 Ohio St.2d at paragraph 3 of the syllabus. Moreover, "when a defendant `speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination by revealing contradictions,' the trial court does not abuse its discretion by finding the defendant had not shown a particularized need." State v. Mack (1995), 73 Ohio St.3d 502, 508,653 N.E.2d 329, quoting State v. Webb (1994), 70 Ohio St.3d 325, 337,638 N.E.2d 1023. The requisite particularized need has been found to exist where nondisclosure will probably deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony. Greer, 66 Ohio St.2d at paragraph 3 of syllabus. Without more, the length of time between the murder and appellant's indictment, as well as the desire to compare the testimony before the grand jury with the trial testimony, are only speculation and not "particularized need[s]" requiring disclosure of the grand jury transcripts.[1]
 {¶ 23} We do not find that the trial court abused its discretion in denying appellant's request for disclosure of the grand jury transcripts; thus, appellant's second assignment of error is not well-taken.
 III. {¶ 24} Appellant's third assignment of error is that the trial court erred when it denied his motion for acquittal.
 {¶ 25} Rule 29(A) of the Ohio Rules of Criminal Procedure provides in whole:
 {¶ 26} "Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 27} The standard of review as to the sufficiency of the evidence has been set forth by the Supreme Court of Ohio in State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus, 381 N.E.2d 184:
 {¶ 28} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." See, also, Statev. Mercer, Cuyahoga App. No. 81923, 2003-Ohio-3530; State v. Collymore, Cuyahoga App. No. 81594, 2003-Ohio-3328. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, 574 N.E.2d 492, in which the Supreme Court of Ohio held:
 {¶ 29} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 30} R.C. 2903.01 provides:
 {¶ 31} "(A) No person shall purposely, and with prior calculation and design, cause the death of another."
 {¶ 32} Here, the trial court, in construing the evidence most favorable to the State of Ohio, found that there was a potential for jury issues and denied appellant's request for a motion for acquittal. Despite appellant's argument that there was no direct evidence that appellant shot Clarence Jackson and no evidence establishing prior calculation and design beyond a reasonable doubt, the record is replete with evidence sufficient for any rational trier to fact to have found the essential elements of aggravated murder. Under Ohio law a defendant may be convicted solely on the basis of circumstantial evidence. State v.Nicely (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236. Moreover, "circumstantial evidence alone can be used to sustain an aggravated murder conviction, as it `may be more certain, satisfying, and persuasive than direct evidence.'" State v. Tinch (1992), 84 Ohio App.3d 111, 123,616 N.E.2d 529, quoting State v. Jackson (1991), 57 Ohio St.3d 29, 38,565 N.E.2d 549.
 {¶ 33} First, appellant's threat and warning to Debra the day before the murder that he would "make an example out of her" if she failed to pay appellant back for the drugs could be seen as a plan, scheme, or design by a rational trier of fact to be carried out if in fact Debra failed to repay appellant.
 {¶ 34} Second, at least four eyewitnesses testified that appellant was present at the murder, had a .380 semi-automatic gun, and fired it. Although the State of Ohio's witness from the Bureau of Special Investigations, Scientific Unit, testified that he was unable to determine which of the two guns held by appellant and Phillip fired the fatal shot and murdered Clarence Jackson, two of the eyewitnesses testified that they saw appellant aim his gun in the direction of Clarence Jackson.
 {¶ 35} Finally, the subsequent warrant issued to both appellant and his brother for aggravated murder was served successfully only upon Phillip because appellant left the United States, and, at the very least, arrived in Israel seven days after the murder and did not return to the United States until he was extradited in 2000. Any rational trier of fact could have found that appellant's "travels" so close to the murder were not merely coincidence and more likely an attempt to avoid prosecution.
 {¶ 36} After viewing the evidence in the light most favorable to the State of Ohio, any rational trier of fact could have found the essential elements of aggravated murder proven against appellant beyond a reasonable doubt. Therefore, appellant's third assignment of error is without merit.[2]
 IV. {¶ 37} Appellant's fourth assignment of error contends that his conviction for aggravated murder is against the manifest weight of the evidence.
 {¶ 38} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
 {¶ 39} "Here, the test [for manifest weight] is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *" State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526, ¶ 8, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, Tibbs v. Florida (1982), 457 U.S. 31.
 {¶ 40} The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Moore at ¶ 8, citing State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore at ¶ 8, citing Martin.
 {¶ 41} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus,490 N.E.2d 926. These factors, which are not exhaustive, include:
 {¶ 42} "1) Knowledge that even a reviewing court is not required to accept the incredible as true;
 {¶ 43} "2) Whether evidence is uncontradicted;
 {¶ 44} "3) Whether a witness was impeached;
 {¶ 45} "4) Attention to what was not proved;
 {¶ 46} "5) The certainty of the evidence;
 {¶ 47} "6) The reliability of the evidence;
 {¶ 48} "7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 {¶ 49} "8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary."
 {¶ 50} As stated in this court's analysis of appellant's third assignment of error, none of the evidence presented by the State of Ohio was contradicted; the reliability of the evidence was not challenged; and no uncertainties, conflicts or fragmentation in the evidence were present at trial. Based upon the review required of this court, and considering the entire record, the fact finder did not "clearly los[e] its way" and "create such a manifest miscarriage of justice" that appellant's conviction must be reversed. Appellant's fourth assignment of error is without merit.
 V. {¶ 51} Appellant's fifth assignment of error contends that he was denied the effective assistance of counsel.
 {¶ 52} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Pursuant to Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. Bradley, 42 Ohio St.3d 136, at paragraph one of the syllabus. To show such prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie (1998), 81 Ohio St.3d 673, 674,693 N.E.2d 267.
 {¶ 53} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense "so serious as to deprive the defendant of a fair trial." State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, quoting,Strickland, 466 U.S. at 687.
 {¶ 54} Here, appellant argues that defense counsel's failure to obtain expert witnesses on the weakness of any eyewitness identification and ballistics portrays deficient performance which prejudiced appellant's right to a fair trial. First, even assuming that defense counsel could have obtained expert witnesses to discuss the merits of the eyewitness' testimony, such "failure" would not have been likely to change the result, especially when all eyewitnesses produced by the State of Ohio placed appellant at the murder and shooting, and at least two of the eyewitnesses saw appellant aim and shoot his gun directly at Clarence Jackson. Second, even assuming that defense counsel could have obtained an expert witness to discuss the ballistics, such "failure" would not have been likely to change the result, as neither appellant's nor Phillip's gun was found. Moreover, we agree with the State of Ohio's assertion that it was not required to prove who fired the fatal shot that killed Clarence Jackson where appellant and Phillip both shot their guns and a death occurred. See State v. Taylor (1993), 66 Ohio St.3d 295,306, 612 N.E.2d 316, citing R.C. 2923.03(A)(2) and (F). Thus, defense counsel's failure to call a ballistic expert at trial did not prejudice appellant.
 {¶ 55} Even assuming that appellant's counsel's performance fell below the objective standard of reasonable representation, there is no reasonable probability that appellant's conviction for aggravated murder would have been different. Thus, appellant's fifth assignment of error is not well-taken.
 VI. {¶ 56} Appellant's sixth assignment of error contends that the trial court abused its discretion in its evidentiary rulings to appellant's prejudice.
 {¶ 57} The Supreme Court of Ohio held in State v. Lyles (1989),42 Ohio St.3d 98, 99, 537 N.E.2d 221, that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." See, also, State v. Sage (1987), 31 Ohio St.3d 173, at paragraph two of the syllabus, 510 N.E.2d 343. Where error in the admission of evidence is alleged, this court has held that "`* * * unless * * * [the trial court] has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'"Lyles, 42 Ohio St.3d at 99, quoting State v. Maurer (1984),15 Ohio St.3d 239, 265, 473 N.E.2d 768.
 {¶ 58} Appellant argues that the trial court abused its discretion by admitting into evidence the documents relating to appellant's whereabouts from the time of the murder (including his wallets, various licenses, and identification cards) and the affidavits included in the extradition documents. Appellant also argues that the trial court abused its discretion by failing to give a "flight" instruction to the jury.
 {¶ 59} First, appellant argues that the various documents relating to appellant's whereabouts were not self-authenticating (as the State of Ohio argued) and were admitted into evidence to his prejudice. Rule 902(3) of the Ohio Rules of Evidence provides:
 {¶ 60} "Foreign public documents.
 {¶ 61} "A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (a) of the executing or attesting person, or (b) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification." Regardless of whether the trial court properly admitted the documents into evidence, we agree with the State of Ohio that no prejudice resulted to appellant as the documents related only to appellant's "flight" to avoid prosecution and not the essential elements necessary to prove aggravated murder.
 {¶ 62} Second, appellant argues that the extradition documents should not have been admitted into evidence because of the affidavits contained in the documents. However, counsel stipulated at a sidebar at trial to redact any of the factual allegations in the form of affidavits, as well as any comments on any of the governmental extradition documents made by the police, and simply admit the official governmental extradition documents and photo array. Furthermore, "where evidence has been improperly admitted * * *, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." Lyles, 42 Ohio St.3d at 100, quoting State v. Williams (1983), 6 Ohio St.3d 281, 290, 452 N.E.2d 1323. Here, the overwhelming evidence establishes appellant's guilt beyond a reasonable doubt of aggravated murder even without the documents seized by the U.S. Marshal or the extradition documents.
 {¶ 63} Third, appellant also argues that it was denied a "flight" instruction to the jury. However, the record plainly indicates that a "flight" instruction was given to the jury.
 {¶ 64} Because there is no evidence that the trial court abused its discretion in deciding what to admit into evidence, appellant's sixth assignment of error is not well-taken.
 VII. {¶ 65} Appellant's seventh assignment of error contends that the guilty verdict was impermissibly derived solely from an inference based on an inference.
 {¶ 66} A trier of fact may not draw "an inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]" State v. Cowans, 87 Ohio St.3d 68,1999-Ohio-250, quoting Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St. 329, paragraph one of the syllabus, 130 N.E.2d 820. However, "an inference * * * based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in * * *." Hurt, 164 Ohio St. at paragraph two of the syllabus. In Hurt, the Supreme Court of Ohio determined that "an inference based solely and entirely upon another inference and which is unsupported by any additional fact or another inference from other facts is an inference upon an inference and may not be indulged in by a jury." Id.; see, also,State v. Evans, Franklin App. No. 01AP-594, 2001-Ohio-8860. However, "an inference based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury."Hurt at paragraph two of the syllabus. See, also, Motorists Mut. Ins.Co. v. Hamilton Twp. Trustees (1986), 28 Ohio St.3d 13, syllabus,502 N.E.2d 204. "Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences." Donaldson v. N. Trading Co. (1992), 82 Ohio App.3d 476,481, 612 N.E.2d 754.
 {¶ 67} Despite appellant's argument, appellant's conviction is not impermissibly derived solely from an inference based on an inference. Appellant argues that the jury had to infer that appellant fired the fatal shot that killed Clarence Jackson to find him guilty of aggravated murder and that the jury must also have inferred that since appellant was present at the murder and fired his gun that he had the requisite mental intent as well as prior calculation and design necessary for a conviction of aggravated murder. These inferences, however, are supported by parallel facts in the record as discussed in the court's analysis of appellant's third assignment of error. Moreover, as discussed in the court's analysis of appellant's fifth assignment of error, it was not necessary for the State of Ohio to prove that the fatal shot that killed Clarence Jackson came from appellant's gun in order to convict appellant of aggravated murder. Instead, the record contains more than sufficient evidence that shows appellant's complicity in the commission of the crime — aggravated murder.
 {¶ 68} Because appellant's conviction of aggravated murder is not impermissibly derived from an inference upon an inference, appellant's seventh assignment of error is not well-taken.
Judgment affirmed.
PATRICIA ANN BLACKMON, J., and JAMES J. SWEENEY, J., concur.
[1] Likewise, appellant was not prejudiced by not having access to the grand jury transcripts because appellant cross-examined the trial witnesses and attempted to impeach the witnesses with their previous statements made closer in time to the murder and appellant's indictment.
[2] Appellant contends that the State of Ohio's strongest argument for indicting appellant is through the complicity statute, but later argues that even that would not apply because Phillip pled guilty to involuntary manslaughter and not aggravated murder. Appellant's contention is without merit, as Phillip was originally charged with aggravated murder, but struck a plea bargain with the prosecution for the lesser offense of involuntary manslaughter.